Mary Mabee and Clarence M. Mabee, Appellees, v. Sutliff and Case Company, Inc., Appellant.

Gen. No. 10,217.

354

Opinion filed October 25, 1948. Released for publication November 12, 1948.

Miller, Westervelt, Johnson & Thomason, of Peoria, for appellant; John D. Thomason and David A. Nicoll, both of Peoria, of counsel.

Knoblock, McConnell & Kennedy and William C. Nicol, all of Peoria, for appellees; Louis F. Knoblock and William C. Nicol, both of Peoria, of counsel.

Mr. Justice Dove delivered the opinion of the court.

On December 10, 1945, Clarence M. Mabee, with the knowledge of his wife, Mary Mabee, ordered from Sutliff and Case Company of Peoria, two gallons of sulphuric acid. About three o'clock that afternoon an employee of the company delivered to the Mabee home in Peoria, two glass jugs each containing one gallon of this acid. Mrs. Mabee was at home and received these jugs and as she was carrying them through the dining room of her home, one jug broke and as a result thereof she was quite severely burned and the floor of the dining room injured. To recover for her personal injuries and for the damage to the property of Mr. and Mrs. Mabee this action was brought.

The complaint consisted of two counts. The first count alleged, among other things, that the plaintiffs ordered from the defendant a quantity of sulphuric acid and that the defendant accepted the order and knew or should have known that sulphuric acid was inherently dangerous and harmful unless properly protected; that it was then and there the duty of the defendant to place the sulphuric acid in a proper and safe container; that the defendant disregarding its duty caused said acid to be placed in a gallon glass jug which was defective and a dangerous receptacle for said acid; that the defendant delivered said acid to the plaintiff, Mary Mabee and that immediately upon receipt of the jug, the said container broke or disintegrated, causing the acid to pour over and upon the body of Mary Mabee causing serious injuries to this plaintiff. The second count is the same as count one

in its charge of negligence but alleges that when the container broke or disintegrated the acid damaged the floor and furnishings of the home belonging to both plaintiffs.

The defendant filed its answer denying each and every allegation of both counts. The issues thus made were submitted to a jury resulting in verdicts finding the defendant guilty and assessing the damages of the plaintiff, Mary Mabee at the sum of $5,000 and assessing the property damage of both plaintiffs, Mary Mabee and Clarence M. Mabee, at $325. After denying motions for judgment notwithstanding the verdicts and for a new trial, the trial court entered judgment upon the verdicts and the defendant prosecutes this appeal.

The record discloses that the defendant has been engaged in the retail and wholesale drug business in the City of Peoria for 60 years and in connection with their business sold and delivered sulphuric acid in gallon glass jugs. On December 10, 1945, the plaintiff, Clarence M. Mabee, ordered from the defendant two gallons of sulphuric acid which he intended to pour into a drain tile to eat out root stoppage in the drain or connecting sewer of their home. Mrs. Mabee testified she was 45 years of age and other than her 22 months old grandson, she was alone in her house when the driver of defendant's truck came to her front door about three o'clock on the afternoon of December 10, 1945. She answered the knock at the door. When she opened the door the truck driver of the defendant placed two one gallon glass jugs on the living room floor about two feet from and just inside the door. She knew that this acid had been ordered. Each bottle bore a ''sulphuric acid'' label. The truck driver handed Mrs. Mabee a receipt which she signed and returned to the truck driver. The delivery man left and she closed the door and then picked up the jugs by the neck handles, one in each hand with her arms straight

down, one on each side, and walked through the living room (18 feet) and entered the adjoining dining room. After she had crossed the living room and had proceeded half way through the dining room, or a distance of between 20 and 25 feet from the outside front door, the jug in her left hand, so she testified, "went to pieces" and the sulphuric acid "went over everything, myself and the floor." As a result thereof she suffered second and third degree burns on both legs below the knees. Immediately thereafter she returned to the front door but the driver and truck had gone and she then telephoned the hospital and then the fire department and then went to a neighbors and from there a cab was called and she went to the hospital.

Clarence Mabee testified that he was and had been a mail carrier for 26 years, that he ordered the sulphuric acid from the defendant about nine o'clock on the morning of December 10, 1945, and was not at home when the accident occurred. He stated that he examined the broken jug and the cap thereof and found that the jug was an ordinary glass container used for storing fruit juices and syrups and that the cap had "Coca Cola" stamped thereon. He testified that the bottom of the jug was broken out and the upper top was in three pieces and that the glass was just thin. The property damage, according to this witness amounted to $325. The foregoing is substantially all the evidence offered on behalf of the plaintiffs, other than the medical testimony and that which pertained to the injuries received by Mrs. Mabee. At the conclusion of the evidence offered on behalf of the plaintiffs, the defendant moved for an instructed verdict which was denied.

On behalf of the defendant, Scott Leonard Pratt testified that he had formerly been employed by the defendant company and that on and for some time prior to December 10, 1945, his job was to fill gallon jugs and some bottles with acids. He testified that during

the two years he was employed by the defendant he was the only employee who filled bottles and jugs with sulphuric acid and that he filled about 150 jugs with sulphuric acid during those two years; that the jugs and bottles were washed at the warehouse and brought to him; that he drained the bottles and jugs, looked them over pretty carefully and never noticed any defects in the containers which he filled with sulphuric acid and no jug ever broke while he was handling or filling it with sulphuric acid.

Boyd Smith, defendant's truck driver, testified that he made the delivery of these two gallon jugs of sulphuric acid to the Mabee home. That he loaded these jugs in the truck, placing them in a wooden box with a heavy piece of cardboard between them so they would not hit against each other and that he started his delivery about one-thirty o'clock the afternoon of December 10; that he unloaded these jugs by placing a finger of his right hand in the neck handle of one jug and the finger of his left hand in the other neck handle. He continued: "I rang the door bell and the lady came to the door. In the meantime I set the two jugs down on the porch and handed my check in to sign and she signed it. I reached down and handed her one jug and handed her the other jug and then I went off the porch. She had one jug in her finger and one in her arm. She put the one jug under her right arm." This witness further testified that he had handled sulphuric acid for five years, knew what it would do and never noticed any crack in either of those jugs or any defects and that they looked perfect to him and that the reason he remembered so much about it was because some one told him of the accident at the time.

LeRoy W. Herr, a captain in the Peoria fire department, stationed seven or eight blocks from the Mabee home, arrived at the Mabee home within two or three minutes after Mrs. Mabee's call. He testified that when he arrived he noticed sulphuric acid fumes and

opened the windows and then inquired of Mrs. Mabee, "how in the world she spilled that acid on the floor and on herself?" She replied that the man who delivered the acid put it on the front porch and she was carrying it to the kitchen and as she was going around the table "she either slipped or got off balance and the jars came together." In rebuttal Mrs. Mabee denied that she told Mr. Herr that she slipped and the jugs came together.

The evidence further discloses that sulphuric acid cannot explode and does not have any explosive characteristics. It is a corrosive and tends to eat up most materials. It is heavier than water and mixes with water and alcohol. The accepted method and practice of dispensing and delivering sulphuric acid is in glass containers and the vice president of defendant company testified that he had been with the company for 49 years and that this had been its practice and no one to his knowledge had ever been injured by sulphuric acid being so dispensed and delivered. Another witness who had been with the company in its sales department for 23 or 24 years corroborated the vice president and testified that the practice of the company was to put sulphuric acid in gallon jugs for local delivery and that the company had so delivered prior to December 1945, between 40 and 50 gallons per month. The evidence is further that December 10 was a bright, clear day, the sun was shining and the outside temperature was 17 degrees above zero; that a change from 17 degrees to ordinary room temperature would not affect the properties of this acid and that the breakage of this container could not be attributed to the fact that for an hour and one half this jug was in a truck while the truck was in motion and in a temperature at 17 degrees above zero and was being jolted and jarred and then taken into a warm room.

Counsel for appellant insist that under the pleadings, the doctrine of *res ipsa loquitur* is not available

to appellees because their complaint alleged that the duty of the defendant was to place this sulphuric acid in a safe container and that it breached this duty by putting the acid in a gallon jug which was a defective and dangerous receptacle for said acid. Counsel state that this is a specific and not a general charge of negligence. If, however, under the pleadings this doctrine is available to appellees, then under the undisputed facts in this record, counsel for appellant insists that the doctrine is not applicable.

Counsel for appellees agree that, under the authorities, in order for plaintiffs to avail themselves of the doctrine of *res ipsa loquitur,* they must submit their cause under a general negligence count. They say they did so and that there is no specification in their complaint that the container of this acid was cracked, that its walls were thin or that glass is an improper substance from which to construct a sulphuric acid jug. Therefore, conclude counsel, the charge is general and not specific. Counsel further insist that irrespective of the application of the doctrine of *res ipsa loquitur,* the evidence found in this record fully sustains their charge of negligence and the jury having determined the facts in their favor, their findings should not be disturbed.

The cause was tried upon the theory that the doctrine of *res ipsa loquitur* applies. Literally the expression *res ipsa loquitur* means, ''the thing itself speaks'' or ''the transaction speaks for itself'' (38 Am. Jur. 989). More precisely the doctrine asserts that whenever a thing which produced an injury is shown to have been under the control and management of the defendant, and the occurrence is such as in the ordinary course of events does not happen if due care has been exercised, the fact of injury itself will be deemed to afford sufficient evidence to support a recovery in the absence of any explanation by the defendant tending to show that the injury was not due

to his want of care. (*Bollenbach v. Bloomenthal,* 341
Ill. 539, 542; 20 R. C. L. 187, citing *Hart v. Washington
Park Club,* 157 Ill. 9.) The presumption or inference
of negligence raised by the application of this doctrine
is not absolute or conclusive but is rebuttable and van-
ishes entirely when any evidence appears to the con-
trary and where all the facts attending the injury are
disclosed by the evidence, and nothing is left to infer-
ence, no presumption can be indulged and the doctrine
of *res ipsa loquitur* has no application (20 R. C. L.
188).

"It is essential to the application of the doc-
trine of res ipsa loquitur that it appear that the in-
strumentality which produced the injury complained
of was, at the time of the injury, under the man-
agement or control of the defendant or of his agents
or servants. When, however, it appears that the vic-
tim has exclusive control of the offending thing, no
imputation of responsibility will attach to the defend-
ant." (38 Am. Jur. 996.) See also *O'Rourke v. Mar-
shall Field & Co.,* 307 Ill. 197, 200; *Feldman v. Chicago
Rys. Co.,* 289 Ill. 25. One of the necessary requisites
for the application of the rule in the instant case is
therefore that this glass container was under the ex-
clusive control of appellant. The situation here is
that the title and possession of this jug and its con-
tents had passed from appellant to appellees. Mrs.
Mabee had actual physical control and exclusive pos-
session of the container and its contents and had car-
ried it some distance before it broke. Glass is not a
substance that becomes weakened by use unless from
the application of some physical force it is cracked.
When this glass container was filled with sulphuric
acid it was sound and strong enough to support the
pressure of that substance. It was strong enough to
hold its contents while being transported from appel-
lant's place of business to the home of appellees. It
was strong enough to support the pressure exerted

upon it from within until after the employee of appellant had departed and Mrs. Mabee had carried it some 20 or 30 feet. If it was cracked or defective and not strong enough to support the pressure exerted upon it at the time it left the control of appellant and came into the possession of Mrs. Mabee, the contents would have been spilled when possession was transferred or delivered to Mrs. Mabee and not a few minutes later.

Counsel for appellees, while recognizing the general rule to be that the instrumentality which produces the injury complained of must be at the time of the injury under the management and control of the defendant, argue that the evidence here discloses that this jug broke within a very short time after it came into the possession of Mrs. Mabee and that her possession for just a few moments is not sufficient to render inapplicable the doctrine of *res ipsa loquitur*. In support of this contention counsel cite and chiefly rely upon *Oakdale Bldg. Corp. v. Smithereen Co.*, 322 Ill. App. 222 and *Johnson v. Stevens Bldg. Catering Co.*, 323 Ill. App. 212.

In the *Oakdale Bldg. Corp.* case, *supra*, the plaintiffs sought to recover damages by fire alleged to have been caused by the negligence of the defendant and which originated in a residential apartment and starting when no one was in the apartment and shortly after an exterminator employed by defendant had left the apartment. In reversing the judgment of the trial court rendered on a verdict of the jury finding the defendant not guilty, the court set forth the evidence on behalf of the plaintiffs, referred to the fact that no evidence was offered on behalf of the defendant, cited a number of authorities and said: (p. 227) "We think the authorities warrant the conclusion that the doctrine of res ipsa loquitur applies to the circumstances of this proceeding. The Gillum apartment was in good condition when possession was given to defendant for the purpose of exterminating. For approximately one-

half hour defendant's representative was in exclusive control of the apartment. The fire started shortly after he left. Defendant may have had some knowledge as to how the fire originated, if not, it was certainly incumbent upon it to offer evidence as to the nature of the work done in the Gillum apartment, the materials used, and what its representative did during the half hour that he had control of the apartment, to rebut or overcome, if it could, the circumstantial presumption of negligence. To allow defendant to escape liability by concealing such knowledge after plaintiffs had adduced all the evidence that they possibly could under the circumstances would be a perversion of the rule upon which the doctrine is founded.''

*Johnson v. Stevens Bldg. Catering Co.*, 323 Ill. App. 212, was an action to recover damages for injuries sustained by the plaintiff because of the alleged negligence of the defendant in serving hot tea to her in a defective glass decanter. It appeared from the evidence that a glass decanter, filled with hot water with a tea ball suspended therein on a string was placed upon a tray at the serving counter of defendant's cafeteria. Plaintiff carried the tray about 15 feet to a table; shortly thereafter she took hold of the insulated neck of the decanter with her right hand and was removing the cork with her left hand when the decanter, as plaintiff described it, ''broke to pieces—the whole side of the bottle broke'' causing the hot tea to spill over her person. Plaintiff testified that she did not drop the decanter or permit it to strike or knock against anything while it was in her possession. The plaintiff based her case upon the doctrine of *res ipsa loquitur* and had a verdict and judgment for $750. The defendant insisted the doctrine had no application to the facts for the reason that the instrumentality which caused plaintiff's injuries was not in its control or management at the time of the occurrence. In discussing this question the court said, (p. 216); ''The material question pre-

sented by this contention is whether defendant had divested itself of its control and management of the decanter merely because it had turned over the possession thereof to plaintiff momentarily so that she might carry it to a table and pour the tea therefrom into her cup. The decanter was owned by defendant and used in the operation of its business. So long as it adopted this method of serving hot tea, it was its duty to furnish decanters to its patrons that were reasonably safe and sufficient for the purpose for which it used them. Can it be said that because plaintiff had the decanter in her possession for a minute or two from the time the waitress placed it on her tray until it broke on the table, such momentary possession charged her either wholly or partially with its control and management? We think not. We fail to perceive how defendant is in any different position as to its exclusive control and management of the decanter under the circumstances shown here than it would have been if one of its waitresses had placed the decanter on the table and it broke without plaintiff having touched it. It is not asserted by defendant that plaintiff's fleeting possession of the decanter imposed any duty on her to inspect it for defects but it is suggested that she might possibly have dropped it or struck it against something and thereby caused it to crack and break. There is no evidence in the record to support this suggestion. In our opinion defendant had the exclusive control and management of the instrumentality that caused plaintiff's injuries and therefore the doctrine of res ipsa loquitur is applicable to the occurrence involved herein.''

 In the *Johnson* case the container was only temporarily out of possession of the defendant. It was owned and used by defendant in the operation of its business, while in the instant case, at the time of the accident appellant had lost all control of this bottle and its contents and title and possession thereof had passed to appellees and the accident occurred at their

home. They had exclusive possession thereof and under the pleadings and undisputed facts as disclosed by this record, we do not believe the doctrine of *res ipsa loquitur* is available to appellees. If, however, the doctrine is applicable, appellant offered evidence, which, in our opinion, was sufficient to overcome the circumstantial presumption of negligence which may have arisen from the evidence offered on behalf of the plaintiffs and thereby met the requirements laid down by the court in the *Oakdale Bldg. Corp.* case. ·

It is argued by counsel for appellees that even though the doctrine of *res ipsa loquitur* is not applicable still the proof in this record, direct and circumstantial, is sufficient to sustain the verdict of the jury and the judgment of the trial court. In this connection counsel state that the evidence disclosed that appellant utilized makeshift containers, that its inspection and bottling method was haphazard and its failure to pad or protect the bottom of the glass jug during delivery over rough streets leads to the inescapable conclusion that appellant bottled and handled sulphuric acid in the same manner as it would have bottled and handled distilled water and therefore the jury were warranted in finding that the container was defective and that appellant did not exercise that degree of care commensurate with the danger involved. The evidence is that this container was sufficient for the purpose intended until it passed out of the exclusive control of appellant. Why this container went to pieces if it did not come in contact with the other jug or any other object must be left to surmise or conjecture. Counsel for appellees advance the theory that inasmuch as sulphuric acid is heavier than water the weight of the contents of this jug caused the bottom of the jug to give way but again the evidence is that it sustained the weight of the contents until it passed beyond the control of appellant.

Sulphuric acid is a corrosive, oily liquid colorless when pure, usually yellowish or brownish and is heav-

ier than water. So far as this record discloses, a glass jug or bottle containing sulphuric acid has never been known to have gone to pieces and broken as Mrs. Mabee testified this container did. The Encyclopedia Brittanica says that sulphuric acid is generally sold in carboys which are glass bottles enclosed in basket work or in a box for protection. The evidence in this case discloses that the standard and accepted method of dispensing and delivering this acid is in glass containers and this method was followed; that the containers had been inspected and after being filled they were placed in a wooden box and a heavy piece of cardboard was placed between them when they were placed in the truck for delivery. The evidence is further that neither the manner in which they were handled prior to being delivered to the home of appellees or the temperature, outdoors or indoors, would have any affect either upon the jug or its contents.

The complaint in this case alleged that this gallon glass jug was a defective and dangerous receptacle for sulphuric acid. The law is that one who seeks to recover of another on the ground of negligence on the part of that other assumes the burden of maintaining the negligence complained of, and although the case is one authorizing the application of the doctrine of *res ipsa loquitur*, the plaintiff, nevertheless, must assume the burden of establishing negligence by a preponderance of the evidence. (20 R. C. L. 194–5, Negligence, sec. 161.) There is no exception to the rule that one seeking damages for an injury caused by the negligence of another must establish the negligence charged by a preponderance of the evidence. If the evidence does not show any negligence on the part of the defendant there can be no recovery. Appellees rely solely on the testimony of Mrs. Mabee to the effect that this container, after it came into her possession, "went to pieces" and from that evidence alone, conclude that their charge that the container was defective was

proven and the defendant liable. From all the evidence in this record this conclusion does not follow. The evidence does not sustain the allegation of the complaint that this glass jug was a defective and dangerous receptacle for sulphuric acid.

After the accident the three pieces of the broken jug were in the possession of the plaintiffs. They did not produce them upon the trial or offer them in evidence or account for their absence. There is no evidence that anyone made any examination of these pieces, either separately or when put together as a jug or that an examination thereof disclosed any defects. From a consideration of all the evidence in this record, we are clearly of the opinion that the verdict of the jury is manifestly against the weight of the evidence and the trial court erred in not sustaining defendant's motion for a new trial.

The judgment of the circuit court of Peoria county is reversed and the cause remanded.

*Reversed and remanded.*