Patricia Kay Brock, Infant, by Lewis Clinton Brock, Father and Next Friend, Appellee, v. W. T. Vancil et al., Trading as Vancil's Funeral and Ambulance Service and Vivian Margaret Sheedy, Appellants.

Term No. 50F2.

Opinion filed April 28, 1950. Released for publication May 29, 1950.

ROBERT G. BURNSIDE, of Vandalia, and GILLESPIE, BURKE & GILLESPIE, of Springfield, for appellants; ROBERT G. BURNSIDE, of Vandalia, LOUIS F. GILLESPIE and FREDERICK H. STONE, both of Springfield, of counsel.

RAEMER & HORN, of Salem, for appellee.

MR. PRESIDING JUSTICE BARDENS delivered the opinion of the court.

Patricia Kay Brock, an infant, by Lewis Clinton Brock, her father and next friend, filed suit in the circuit court of Fayette county against W. T. Vancil, R. L. Vancil, Isabelle Vancil and Kay B. Vancil, doing business as Vancil's Funeral and Ambulance Service, and Vivian Margaret Sheedy to recover damages for personal injuries. The complaint charges that the de-

fendants appellants, W. T. Vancil, R. L. Vancil, Isabelle Vancil and Kay B. Vancil, doing business as Vancil's Funeral and Ambulance Service, were owners of a motor vehicle especially equipped to transport sick and invalid people to hospitals and clinics and represented themselves to the public as being specialists in this business for hire; that the defendant, Vivian Margaret Sheedy, was a student nurse at St. John's Hospital, Springfield, Illinois; that said defendants were guilty of negligence while jointly undertaking to transport for hire, the plaintiff, Patricia Kay Brock, a prematurely born infant, from Salem Memorial Hospital at Salem, Illinois, to the City of Springfield, Illinois. It is charged that this negligence resulted in the plaintiff suffering third degree burns over her entire body when the incubator in which she was riding caught fire. To this complaint the defendants appellants filed an answer denying each and every of the material allegations therein except those allegations neither admitted or denied because of insufficient knowledge.

The jury returned a verdict in favor of the plaintiff and against the defendants appellants, W. T. Vancil, R. L. Vancil, Isabelle Vancil and Kay B. Vancil, doing business as Vancil's Funeral and Ambulance Service and assessed the damages of the plaintiff in the amount of $20,000. The defendant, Vivian Margaret Sheedy, was found not guilty. No further action was taken against her and this appeal does not involve said nurse in any way. The motion of the appellants for a new trial was allowed solely on the grounds that the verdict was excessive. The court held that if the plaintiff would file a written remittitur of $5,000 within 30 days that the motion for a new trial by the appellants would be denied. Such remittitur was filed with judgment being entered in favor of the plaintiff and against the defendants appellants, W. T. Vancil, R. L. Vancil, Isabelle Vancil and Kay B. Vancil, for $15,000 and costs of suit.

The evidence introduced at the trial reveals that on March 7, 1947, the appellants owned a 1946 Chevrolet Tudor Sedan, which was specially fitted as an ambulance for the transportation of premature infants. The front seat had been taken out and two seats were replaced so that they would fold over making more room on the side opposite the driver. Racks were installed directly behind the driver's seat to hold oxygen tanks. When engaged in a transportation of premature infants, the electric incubator was placed on the back seat. The incubator received electric current by means of a cord, one end of which was plugged into the incubator, the other end into a specially built six volt outlet in the dash board of the ambulance. The battery of the car furnished the power. Alongside the socket inlet of the incubator there was a light which is normally illuminated when the cord is plugged in the incubator and electricity is passing through said cord.

The incubator and the electric cord supplying electricity from the dash board of the ambulance were both furnished by the State. When a child had been placed in the incubator, oxygen was supplied to the incubator from the oxygen tanks. The attending nurse regulated the oxygen supply, watched the temperature gauge on the incubator and checked to see that the baby's breathing was normal.

On the morning in question Mr. James H. Barry, employee of the Vancil Funeral Home, was instructed to go to Salem at about 9:30 a.m. He drove to St. John's Hospital in the specially equipped ambulance described above and there picked up the defendant, Vivian Margaret Sheedy, incubator No. 2295 and a couple of oxygen tanks. With Miss Sheedy, he then drove to Salem, Illinois, where they arrived at the approximate hour of 1:00 p. m.

When arriving at the hospital at Salem, Mr. Barry helped the nurse carry the incubator up into the hospital and left the oxygen tanks in the ambulance. He

then talked with the mother of the plaintiff and gave her a form of receipt for the plaintiff. He had no part in preparing the baby for her journey or in preparing the incubator. After the baby was in the incubator and ready to go to the ambulance, Mr. Barry again helped the nurse carry the incubator to the car and place it within. Mr. Barry plugged the cord into the dashboard and the nurse plugged the other end of the cord into the incubator. She also connected the oxygen tanks to the incubator and then said that she was ready to proceed to Springfield. She told Mr. Barry that the little light on the incubator did not light. Shortly after leaving Salem, Mr. Barry asked the nurse if the light was on or if heat was coming through and she said that it was not. He then made attempts to see that the cord was properly connected and then headed back towards Salem to have the cord checked. This was done at a filling station. When assured by the station attendant that electricity was coming through the cord, Mr. Barry connected the cord properly and started toward Springfield. The light in the incubator still did not work. Mr. Barry told the nurse that all the heat he had was from the gasoline heater, that he did not believe that it would be enough for the baby and asked her what they should do. The nurse instructed him to drive on. The ambulance was driven towards Springfield to a point on Route No. 51 about five or six miles south of Vandalia when the nurse exclaimed, "This is on fire." She threw the incubator open and pulled the baby out while flames were leaping from the incubator. While she held the baby, Mr. Barry pulled the burning blankets from it and threw the burning incubator outside of the car and onto the ground. He extinguished the fire by pulling the mattress and blanket out of the incubator and then beating out the flames. The heating element of the incubator was located at the bottom. Mr. Barry noticed that

436

a string of four safety pins were lying on the bottom of the incubator. Almost immediately an ambulance came by and took the baby on to Vandalia.

Mr. Russell L. Vancil, being informed of the incident, picked up another incubator in his ambulance and came to Vandalia. The baby was placed in this incubator. Mr. Russell L. Vancil drove the baby on to Springfield using the same cord and the same ambulance as had been used prior to the accident but using the replaced incubator. The incubator heated properly. An examination disclosed that the baby was burned and permanently scarred, primarily on the left side of its face, including its left eye, nose and mouth and also suffered burns over the rest of its body.

The testimony of Vivian Margaret Sheedy agreed substantially with Mr. Barry's story. She stated that the incubator started to heat after the cord was checked in Salem and that she assumed the incubator was working properly. Her testimony was also to the effect that neither Mr. Barry nor none of the appellants gave her instructions as to care of the incubator or exercised any control over it other than helping her carry it to and from the ambulance.

Dr. Maurice T. Horsman testified that he was the doctor attending the mother of the plaintiff and that with the permission of the plaintiff's parents, he had directed that the plaintiff be taken to the St. John's Hospital at Springfield, Illinois. He also testified as to the permanency and character of the scars sustained by the plaintiff. His testimony was to the effect that the plaintiff was permanently scarred and did sustain a great deal of injury to her face. Although plastic surgery might remedy this defect somewhat, it could never cure it completely.

Mrs. Brock, mother of the plaintiff, also testified that she talked with Mr. Barry at the time her baby was taken from the hospital in Salem. She testified

437

that Mr. Barry had assured her that he was with the Vancil Ambulance Company, that they specialized in the transporting of premature infants, that good care would be taken of the baby and that she need not worry about her baby.

Appellants' testimony reveals that on the day in question they had a contract with the Department of Public Health, Springfield, Illinois, to transport premature infants from place of birth to the St. John's Hospital Premature Center in Springfield. Appellants were to be paid in proportion with the distance traveled. Their contract is summarized as follows:

Upon receipt of request for ambulance service from Springfield or an outlying area, the hospital premature station will call your office immediately. It is expected that your ambulance or automobile will then come to the St. John's Hospital, with as little delay as possible. Your driver will pick up a portable premature incubator and a graduate nurse from St. John's Hospital Premature Center and transport both to the place of birth of the infant. The infant will be transported in the portable incubator *under the constant supervision of the graduate nurse from the St. John's Hospital Premature Center*. Your responsibility, in the case of each infant, will end only when the infant, the incubator, and the nurse have been returned to St. John's Hospital Premature Center with as much dispatch as possible. (Italics ours.)

When parents of a premature child certified that certain facts existed, the Department of Health undertook to transport these infants to accredited institutions for care of premature children such as the St. John's Hospital.

Dr. Henrietta Herbolsheimer testified that in March 1947, he was the Director of the Division of the State Health Department which had charge of the program for mothers and babies; that one of the major prob-

lems with the care of babies is premature birth; that certain hospitals were designated by the department as centers for the care of premature children of which the St. John's Hospital at Springfield was one; that in connection with the program for care of premature children the Department of Health furnished transportation service to such centers; that as such department head he did enter into a contract with appellants for the transportation of prematurely born infants to St. John's Hospital which contract is as stated above. Dr. Herbolsheimer also stated that his department supplied certain items of electrical equipment including incubators to authorized premature baby centers such as the St. John's Hospital at Springfield and that they did supply the incubator which caught fire, injuring the plaintiff. He also testified that there was no provision made for the inspection of the mechanical operation of said incubators in the medical centers such as St. John's Hospital but that the incubators were to be sent back to the Department of Health for repair by the manufacturers if anything needed attention on the incubators. After the plaintiff was injured on March 7, 1947, the department requested the Volle Electric Company of Springfield to inspect the incubator in question to ascertain the cause of the accident.

Mr. George H. Volle, secretary and treasurer of the Volle Electrical Service Company and a graduate of electrical engineering from the University of Illinois, testified that he examined the incubator in question in March 1947. He stated that there was a wire broken on the heater which was operated by six volt direct current. This break was at the terminal post in the connection in the cabinet inside the incubator. He also stated that some of the wiring was badly burned in spots and somewhat disarranged. He testified that if there were such a break existing at the time power was supplied that an arc would be formed and that

439

any combustible material such as an atmosphere of 80 per cent oxygen would be readily ignited by such arc. He also stated that if a poorly insulated wire were touched by some foreign metal such as four safety pins that such contact would establish an arc which would ignite an atmosphere containing 80 per cent oxygen. He further testified that whether or not the light on the outside of the incubator worked properly would have no effect as to the flow of current into the six volt connection.

Mr. Russell L. Vancil, one of the defendants, testified that on March 7, 1947, he received a call to make a trip to Vandalia on that day from St. John's Hospital Premature Center. He picked up an incubator like the one which was damaged by fire together with a nurse and proceeded to the hospital in Vandalia. The plaintiff was placed in the second incubator which in turn was placed in the same ambulance which had been driven by Mr. Barry at the time the fire occurred. Also at that time the same cord was used in the ambulance with the second incubator which had been used with the first incubator just prior to the time of the fire. Mr. Vancil, himself, drove the ambulance to Springfield with the plaintiff in the second incubator. He stated that the incubator worked satisfactorily and that the two nurses with him said the incubator was acting all right. He stated that this cord had been in use since July 1945, to the date of the accident and had never improperly functioned during that time. His testimony was also to the effect that it had been used continuously since that time and that there had been no complaints of its performance.

Elizabeth E. Smith testified that she was the immediate superior of Vivian Margaret Sheedy in St. John's Hospital on March 7, 1947; that the incubator in question was in the hospital and had been supplied to them by the State for use with premature infants. She

stated that the incubator was working properly when it was taken from the hospital and that Miss Sheedy was familiarized with oxygen equipment, but had no mechanical instructions concerning electrical equipment. She stated that when the incubator was returned there was a severed wire in the bottom of the incubator.

██ The appellee contends that this set of facts brings the appellants within the doctrine of *res ipsa loquitur*. The doctrine of *res ipsa loquitur* is, that whenever a thing which caused an injury is shown to have been under the control and management of the party charged with negligence and the occurrence or accident is such as in the ordinary course of events does not happen if due care has been exercised, the accident itself affords reasonable evidence in the absence of any explanation by the party charged, that it arose from a want of proper care. *Mabee v. Sutliff & Case Co., Inc.*, 404 Ill. 27; *Bollenbach v. Bloomenthal*, 341 Ill. 539.

██ It is essential to the application of the above doctrine that it appear that the instrumentality which produced the injury complained was, at the time of the injury, under the control and management of the defendants. *Mabee v. Sutliff & Case Co., Inc.*, 355 Ill. App. 353.

██ Here the evidence affirmatively shows that the appellants had no control of the incubator, the instrumentality from which the accident arose. This instrumentality had been loaned by the Department of Health to St. John's Hospital. The incubator in question had at all times remained in the hospital except when being used. On the morning in question, it was at St. John's Hospital under the care and supervision of the nurse there attending until such time as Mr. Barry picked up the defendant Sheedy and said incubator. The evidence also shows that during the

441

course of the journey from Springfield to Salem and from Salem back to the point of the accident that at no time did the appellants or their agent have control of the incubator in question. The defendant nurse, Margaret Sheedy, read the dials on the incubator, regulated the oxygen control and assumed complete control of the incubator. Mr. Barry, agent for the apellants did help the nurse carry the incubator from St. John's Hospital to the ambulance and from the ambulance to the hospital at Salem. When the baby had been properly clothed and placed in the incubator, Mr. Barry helped the nurse carry the incubator back to the ambulance. He plugged in the cord in the outlet on the dash of the ambulance and at one or two times checked to see if the cord was properly plugged in the socket of the incubator. He had never been instructed in the care of the incubator and only knew what he had been told as to the temperature control.

 It should be stated that under the statutes of the State of Illinois, the Department of Health is granted the duty and responsibility of carrying on a program for the care of premature children. In the furtherance of this program, the Department had the authority and did enter into a contract with the appellants for the transportation of premature children to the St. John's Hospital Premature Center in Springfield. This contract did not contemplate that the care of the incubator would rest with the appellants. It is specifically stated in the contract, "The infant will be transported in the portable premature incubator under the constant supervision of the graduate nurse from the St. John's Hospital Premature Center." The appellants have the right to rely on this contract and were responsible as independent contractors only for the transportation of the infant, the incubator and the nurse in each instance to the hospital in question.

It is the opinion of this court that the doctrine of *res ipsa loquitur* is not applicable to the case at bar

since the appellants did not have the control and management of the instrumentality, the incubator. *Mabee v. Sutliff & Case Co., Inc.*, 335 Ill. App. 353 (and cases cited), affirmed in 404 Ill. 27; *Halowatsky v. Central Greyhound Lines, Inc.*, 311 Ill. App. 127.

■ However, even if this case could be held to be within the doctrine of *res ipsa loquitur*, the evidence offered by the appellants as above set forth is sufficient to overcome the circumstantial presumption of negligence which may have arisen from the evidence offered on behalf of the plaintiff. A careful examination of the testimony reveals a complete failure on the part of the plaintiff to show any negligence on the part of the appellants.

The motions of the appellants for directed verdict and for judgment notwithstanding the verdict should have been granted.

The judgment of Fayette county is hereby reversed.

CULBERTSON and SCHEINEMAN, JJ., concur.