Grace Johnson, Appellee, v. Stevens Building Catering Company, Appellant.

Gen. No. 42,872.

Opinion filed May 23, 1944.

Lord, Bissell & Kadyk, of Chicago, for appellant; Fred E. Inbau, of Chicago, of counsel.

Burt A. Crowe, of Chicago, for appellee.

Mr. Justice Sullivan delivered the opinion of the court.

This action was brought by plaintiff, Grace Johnson, against Stevens Building Catering Company to recover damages for personal injuries sustained by her while a patron invitee in the cafeteria section of defendant's restaurant, because of the alleged negligence of defendant in serving hot tea to her in a defective glass decanter, which broke without fault on her part, causing the hot contents thereof to fall into her lap and severely burn her. The jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $750. Defendant's motions for a new trial and for judgment notwithstanding the verdict were overruled. Judgment was entered on the verdict. Defendant appeals. No question is raised on the pleadings and it is not claimed that the damages awarded plaintiff are excessive.

Plaintiff testified that she and her friend, Eunice Peterson, went to defendant's cafeteria for lunch on January 12, 1942; that she ordered hot tea and a piece of pie at the serving counter; that the waitress put the piece of pie on a tray and then went toward the rear

and out of her sight for the tea; that the waitress returned with a glass decanter filled with hot water with a tea ball suspended therein on a string, put a cork in the decanter and placed the latter with a saucer under it on the tray; that she (plaintiff) carried the tray about 15 feet to a table upon which she set the decanter, cup and saucer and pie, and put the tray on an adjoining table; that she then sat down, took hold of the insulated neck of the decanter with her right hand and was removing the cork therefrom with her left hand, when the decanter ''broke to pieces . . . the whole side of the bottle broke'' and the hot tea went into her lap and between her legs; and that she did not drop the decanter or permit it to strike or knock against anything while it was in her possession.

Eunice Peterson testified to substantially the same effect as plaintiff, except that she stated that the decanter broke when Mrs. Johnson picked it up to pour the tea.

Gertrude Dickinson testified that she was employed in defendant's cafeteria to wash the tea and coffee decanters; that she was the only employee assigned to that work and that she washed and inspected every decanter used on the day in question; and that ''I look all over them and see there is nothing broken . . . if they look a little bit nicked I discard them, I throw them away.''

Sophie Kozdron testified that she was the waitress who served plaintiff; and that when Mrs. Johnson ordered hot tea, she reached under the table where the decanters were kept, took one of the bottles to the sink, rinsed it with hot water, put the tea bag in and then the hot water, put the decanter on a saucer, put in the cork and brought it to the tray. She further testified on direct examination as follows: ''Q. Did you look at that bottle before you served it? A. I did. Q. Did you notice anything about it— A. I didn't notice the bottle was cracked. Q. It was not cracked? A. No. Q. And

you looked at it before and after you put the tea in? A. You looked before—you reach for the bottle, you look at it, then you go and rinse it out. Q. And you didn't see any cracks in it? A. I didn't notice the bottle was cracked."

Vincent Tracy, who operated and managed defendant's cafeteria, testified that he saw the decanter in which the hot tea was served to plaintiff after it had broken; that the bottom part of it "was off . . . the bottle was in maybe half a dozen pieces . . . I threw it away because I thought that was just another broken bottle;" that the Pyrex glass decanter involved herein was a standard product manufactured by the Corning Glass Company; that defendant had used decanters of that type for over 10 years, purchasing them from Canterbury Studios; and that they were "breakable."

Vincent Tracy and Arthur Van Cleve, who was a director of defendant company and had formerly owned Canterbury Studios, which had furnished the Pyrex decanters to defendant, both testified that the decanters possessed very high heat resisting qualities and that they had conducted experiments which showed that the decanters could be subjected to rapid changes of temperature "from very hot to very cold and from very cold to very hot" without the occurrence of any breakage. Van Cleve also testified that he had experimented by pouring hot liquids into decanters, which had been cracked, and that they broke "immediately" or within "less than a minute." Van Cleve was asked the following question on cross-examination and he made the following answer: "Mr. Van Cleve, I would like to ask you if a bottle, glass bottle, say one of these Pyrex bottles, is filled with hot liquid, very hot, and there is no crack or defect in the bottle and it breaks, would you say it was a defective bottle? A. No, I would say it was an act of God."

Defendant first contends that "the doctrine of *res ipsa loquitur,* upon which the plaintiff rested her case,

has no application to the facts and circumstances surrounding the involved occurrence for the reason that the instrumentality which is alleged to have caused plaintiff's injuries was not in the control, possession or management of the defendant or any of its agents at the time of the occurrence.'' The material question presented by this contention is whether defendant had divested itself of its control and management of the decanter merely because it had turned over the possession thereof to plaintiff momentarily, so that she might carry it to a table and pour the tea therefrom into her cup. The decanter was owned by defendant and used in the operation of its business. So long as it adopted this method of serving hot tea, it was its duty to furnish decanters to its patrons that were reasonably safe and sufficient for the purpose for which it used them. Can it be said that because plaintiff had the decanter in her possession for a minute or two from the time the waitress placed it on her tray until it broke on the table, such momentary possession charged her either wholly or partially with its control and management? We think not. We fail to perceive how defendant is in any different position as to its exclusive control and management of the decanter under the circumstances shown here than it would have been if one of its waitresses had placed the decanter on the table and it broke without plaintiff having touched it. It is not asserted by defendant that plaintiff's fleeting possession of the decanter imposed any duty on her to inspect it for defects but it is suggested that she might possibly have dropped it or struck it against something and thereby caused it to crack and break. There is no evidence in the record to support this suggestion. In our opinion defendant had the exclusive control and management of the instrumentality that caused plaintiff's injuries and therefore the doctrine of *res ipsa loquitur* is applicable to the occurrence involved herein.

Defendant next contends that "the doctrine of *res ipsa loquitur* has no application to the facts and circumstances surrounding the involved occurrence for the reason that the doctrine gives rise only to a presumption, which presumption, even if otherwise applicable to the present case, was rebutted and nullified by evidence introduced on behalf of the defendant."

In *Bolger v. City of Chicago,* 198 Ill. App. 123, the doctrine of *res ipsa loquitur* is defined as follows at p. 125:

"It is a very ancient and salutary principle of law, that where one has charge or management of a thing in connection with which an accident happens, which in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of proper care; that in case of such an accident the duty of explanation is thrown upon those having charge of the thing, particularly when information concerning the thing itself is within the particular or peculiar knowledge of the defendant."

The doctrine is based on the consideration that the injury itself and the circumstances attending it are sufficient to justify the inference of negligence. In other words the *"res"* includes the injury, the instrumentality which caused it and the attending circumstances and the application of the rule presents principally the sufficiency of circumstantial evidence to justify the inference of negligence. The doctrine is also based on the further consideration that where the control of the thing which has caused the injury is exclusively in the defendant it is within his power to produce evidence of the actual cause, which the plaintiff is unable to present.

Plaintiff's injury and the circumstances attending it afforded reasonable evidence to justify the inference

of defendant's negligence and therefore made out a prima facie case, which was of course rebuttable, as is a prima facie case made out by a plaintiff in any law suit. Since the evidence introduced by plaintiff necessitated the presentation of a defense, it was incumbent upon defendant to furnish an explanation of the occurrence consistent with due care on its part, if it could. Plaintiff's prima facie case and defendant's evidence presented by way of explanation of its due care were properly submitted to the jury.

While it has been said in some Illinois cases that the presumption of negligence raised by the application of the doctrine of *res ipsa loquitur* is not absolute or conclusive but is rebuttable and vanishes entirely when any evidence appears to the contrary, it seems to us that where the doctrine is applicable the use of the term "presumption of negligence" is an inapt and unfortunate characterization of the prima facie case made out by the fact of the injury itself and the circumstances attending it. Of course such a prima facie case is neither absolute nor conclusive but to say that it "vanishes entirely when any evidence appears to the contrary" is equivalent to holding that, regardless of how flimsy the explanation offered by a defendant may be as to its exercise of due care in connection with the instrumentality that caused the injury and regardless of the incredibility and improbability of the explanation, such explanation must be accepted as true. If that were the correct rule a plaintiff could never recover under the principle of *res ipsa loquitur,* if a defendant offered any evidence by way of explanation of due care on his part, no matter how incredible and improbable such evidence might be. A prima facie case cannot vanish but must be submitted to the jury together with the evidence presented by the defendant. It is the province of the jury to determine as a question of fact whether the evidence introduced by a defendant in explanation of the occurrence is consistent with due

care on his part and to also determine the credibility and probability of such evidence.

It is further contended that the verdict was against the manifest weight of the evidence. The evidence clearly shows that plaintiff was free from contributory negligence and that the decanter broke without fault on her part. The jury was warranted in so finding, whether the decanter broke while plaintiff was taking out the cork, as she testified, or whether it broke when plaintiff was about to pour the tea therefrom, as Mrs. Peterson stated. It was defendant's duty to exercise reasonable care in respect to the condition of the decanter and its inspection. The breaking of the decanter, which injured plaintiff, was circumstantial evidence of a lack of preoccurrence inspective care of a utensil which defendant invited her to use or of the negligent inspection thereof.

Two witnesses testified in defendant's behalf as to their inspection of the decanter. Gertrude Dickinson washed all the tea and coffee decanters used in defendant's busy cafeteria. While she testified that ''I look all over them and see there is nothing broken,'' it was for the jury to determine whether from the very nature and extent of her work and the manner of her inspection it was probable that she may have overlooked a crack in the decanter in question. As heretofore shown, when the waitress Sophie Kozdron was being interrogated by defendant's counsel, she merely stated in reference to the decanter she served plaintiff, ''I didn't notice the bottle was cracked.'' In her answer to the leading question, ''It was not cracked?'', she said ''No.'' Finally she was asked, ''And you didn't see any cracks in it?'' and she again answered ''I didn't notice the bottle was cracked.'' It is quite apparent from her testimony that she did not inspect the decanter at all for defects. She merely stated that she did not notice it ''was cracked.'' According to defendant's witnesses it was *not unusual* for the decanters to

*break, crack and get "nicked."* Gertrude Dickinson stated that "if they look a little bit nicked . . . I throw them away" and Vincent Tracy, defendant's manager, testified that he threw away the decanter which had been served to plaintiff "because I thought it was just another broken bottle." Arthur Van Cleve, who sold the Pyrex decanters to defendant company and who was one of its directors, testified that tests theretofore made by him demonstrated that a decanter, which had a crack in it, would break immediately or within a minute after it was filled with hot water. The jurors might well have believed that if some of the cracked decanters tested did not break for nearly a minute after they were filled with hot water, others containing a smaller or different kind of crack might not break until a few minutes had elapsed. Van Cleve also testified that if the decanter was not cracked, it must have been "an act of God" that caused it to break. The jurors knew that the breaking of the decanter was not attributable to "an act of God" and this statement by Van Cleve tended to weaken his entire testimony.

The jurors saw the witnesses and heard them testify and were afforded a much better opportunity than we to determine their credibility and the probability or improbability of their testimony. We are impelled to hold that the verdict was not against the manifest weight of the evidence and are therefore not warranted in disturbing it.

For the reasons stated herein the judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.