(No. 45895.—

THE PEOPLE *ex rel.* WILLIAM J. SCOTT, Attorney General, *et al.,* Appellees, v. CHARLES M. JANSON *et al.,* Appellants.

*Opinion filed May 29, 1974.—Rehearing denied June 28, 1974.*

Cassidy, Cassidy & Mueller, of Peoria (John E. Cassidy, Sr., of counsel), for appellants.

William J. Scott, Attorney General, of Springfield (Larry R. Eaton, Nolan Lipsky, and Harvey M. Sheldon, Assistant Attorneys General, and Prescott E. Bloom, Special Assistant Attorney General, of counsel), for appellees.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

On October 16, 1970, the People of the State of Illinois *ex rel.* William J. Scott, Attorney General, and Robert S. Calkins, State's Attorney of Peoria County

(hereafter plaintiffs), filed an action in the circuit court of Peoria County against Charles M. Janson (hereafter defendant) and others. Plaintiffs sought to enjoin defendant's use of land as a commercial garbage dump in violation of certain provisions of the Environmental Protection Act (Ill. Rev. Stat., 1970 Supp., ch. 111½, par. 1001 *et seq.*) until the premises were placed in compliance with that statute and to impose monetary penalties for the violations. They further prayed that a hearing be conducted and a permanent injunction issue. The trial court granted an *ex parte* injunction as permitted by this statute when immediate danger to the public health might exist. (Ill. Rev. Stat., 1970 Supp., ch. 111½, par. 1043.) The matter was also set for hearing. A monetary penalty was ultimately assessed against defendant and he was adjudged in contempt of court for failure to produce books and records after citation proceedings were commenced to discover assets to satisfy the penalty. He was ordered confined to the county jail until such time as he complied with the court's prior directive to produce the documents. The appellate court, one justice dissenting, reversed and found that the trial court did not have the requisite subject-matter jurisdiction to assess a penalty or enter the contempt order. (*People ex rel. Scott v. Janson,* 10 Ill. App. 3d 787.) We granted leave to appeal. The issue now presented is whether the necessary jurisdiction existed.

The complaint charged that defendant was the lessee and operator of a multi-acre refuse dump wherein garbage was burned in violation of law. It also alleged that the unsanitary conditions of the refuse dump produced a breeding place for rodents in the area and that a nearby stream was polluted by the refuse. Defendant moved to dismiss the complaint on October 20, 1970, alleging, *inter alia,* that there were insufficient facts to justify the conclusion that an immediate danger existed to the public health.

On October 22, 1970, the Attorney General count-

ered with a "motion for [an] anti-pollution injunction" pursuant to section 2 of "An Act in relation to the prevention and abatement of air and water pollution" (Ill. Rev. Stat., 1970 Supp., ch. 14, par. 12)(hereafter Attorney General's Act). Pursuant to this statute the Attorney General requested a new injunction order restraining defendant from operating his premises as he had prior to this action and further ordering defendant to alter the present condition of the land to conform with the requirements of law and to do so pursuant to the supervision of the Environmental Protection Agency.

The trial court dismissed the *ex parte* injunction on October 22, 1970, after finding that "there is no circumstance of extreme emergency creating conditions of immediate danger to public health in existence at defendant's premises." Defendant's motion to dismiss the complaint was continued generally. Three weeks later plaintiffs noticed all matters for a hearing on December 7, 1970. Included for consideration was defendant's motion to dismiss the complaint and the motion for an antipollution injunction. On the day set, defendant was granted a continuance, and on December 15, 1970, the trial court denied the motion to dismiss and ordered trial on the merits to commence the following week. Defendant thereafter interposed several dilatory motions and sought discovery.

On February 16, 1971, the parties entered into a stipulation in which defendant agreed that he would suspend further dumping operations; that Keith Weeber, an engineer for the Environmental Protection Agency, would supervise the construction of an earthen wall; that refuse could be dumped within the confines of the wall with Weeber's approval; and that further dumping would be conducted in accord with the Environmental Protection Act. The parties also agreed that Weeber's recommendations as to the operation of the dump site would be accepted by the parties without dispute and that the trial

court might enter appropriate orders to enforce compliance with the stipulation. If defendant failed to operate the site in accordance with Weeber's plan, it was agreed that defendant could be penalized for the monetary remuneration necessary to comply with Weeber's restoration plan and that defendant could be held in contempt of court for nonpayment of said penalty without hearing and without notice. The trial court approved the stipulation following a conference with defendant and the respective attorneys.

Several weeks later a restoration plan was presented pursuant to the stipulation. Thereafter plaintiffs filed a petition for penalties seeking to have defendant pay to restore the premises to a sanitary condition as set forth in the stipulation. It was alleged that improper dumping operations had not abated. After extensive hearings, the trial court assessed a $5,000 penalty against defendant for his failure to adhere to the stipulation and the February 16 court order. The penalty was to be made payable to the State of Illinois. Further use of the dump site was also prohibited until there was full compliance with the aforesaid restoration plan.

On June 4, 1971, Weeber informed the court that defendant was complying with the restoration plan. It would appear from the record that dumping operations were then permitted to begin in certain areas of the site. Defendant later sought to vacate the $5,000 penalty, but the trial court denied his motion after Weeber's subsequent report indicated that certain difficulties relating to the operation of the dump site had recently arisen. On August 24, 1971, plaintiffs sought to hold defendant in contempt of court for failure to pay the penalty. They further alleged that the dump had been reopened in June, that numerous violations of pollution regulations had subsequently occurred and that there had been recent noncompliance with the restoration plan. They requested that the court afford them appropriate injunctive relief. On

September 2, 1971, defendant filed a notice of appeal. The transcript of proceedings indicates that the following day an independent action, not at issue in this appeal, may have been brought against defendant pursuant to the Attorney General's Act seeking injunctive relief for pollution violations previously described in the August 24 pleadings.

The record establishes that defendant did not file a bond to stay enforcement of the trial court's judgment for payment of the penalty. A citation to discover assets was issued requiring production of relevant documents, which defendant failed to produce, and the contempt order was entered.

The majority of the appellate court held that the trial court lacked jurisdiction over the subject matter of the proceedings after dissolution of the *ex parte* injunction on October 22, 1970, thereby rendering the trial court's subsequent actions void. It observed that the relief plaintiffs sought was identical to the relief which may have been obtained in administrative proceedings under the Environmental Protection Act. The majority found that this statute did not authorize the circuit court to so act. In reaching this conclusion it narrowly construed the complaint, emphasizing that it appeared to be predicated only on the aforementioned statute.

Sections 42 and 43 of the Environmental Protection Act read in pertinent part:

> "Section 42. Any person who violates any provision of this Act, or any regulation adopted by the Board, or who violates any determination or order of the Board pursuant to this Act, shall be liable to a penalty of not to exceed $10,000 for said violation and an additional penalty of not to exceed $1,000 for each day during which violation continues, which may be recovered in a civil action, and such person may be enjoined from continuing such violation as hereinafter provided.***
>
> The State's Attorney of the county in which the violation occurred, or the Attorney General shall bring

such actions in the name of the people of the State of Illinois.

Section 43. In circumstances of extreme emergency creating conditions of immediate danger to the public health, the State's Attorney or Attorney General may institute a civil action for an immediate injunction to halt any discharge or other activity causing the danger. The court may issue an ex parte order and shall schedule a hearing on the matter not later than 3 working days from the date of injunction." Ill. Rev. Stat., 1970 Supp., ch. 111½, pars. 1042 and 1043.

Section 2 of the Attorney General's Act provides:

"The Attorney General has the power and authority, notwithstanding and regardless of any proceeding instituted or to be instituted by or before the Environmental Protection Agency, Pollution Control Board or any other administrative agency, to prevent air, land or water pollution within this State by commencing an action or proceeding in the circuit court of any county in which such pollution has been, or is about to be, caused or has occurred, in order to have such pollution stopped or prevented either by mandamus or injunction. ***" Ill. Rev. Stat., 1970 Supp., ch. 14, par. 12.

It is primarily plaintiffs' position that sections 42 and 43 must be interpreted to permit civil actions in the circuit court relative to violations of the Environmental Protection Act. In support of this contention they cite a recent amendment to section 42 which permits the Attorney General or State's Attorney, "on his own motion, [to] institute a civil action for an injunction to restrain violations of this Act." (Ill. Rev. Stat. 1973, ch. 111½, par. 1042(d).) Plaintiffs also maintain that dissolution of the *ex parte* injunction did not foreclose further action by the trial court because that court retained jurisdiction for all purposes to do complete justice between the parties in furtherance of its common-law power to abate public nuisances.

Defendant maintains that sections 42 and 43 of the Environmental Protection Act do not permit the course of action in the trial court which resulted in the stipulation

and the attempt to enforce its terms and impose the monetary penalty against him. He urges that the dissolution of the *ex parte* injunction divested the trial court of jurisdiction to proceed further with the matter. He infers that it might be argued that the legislature provided the sole remedy for pollution violations by enactment of the Environmental Protection Act.

In *City of Waukegan v. Pollution Control Board,* we said:

> "The Environmental Protection Act, enacted in 1970, is consistent with the command of section 1 of article XI [Ill. Const. (1970), art. XI, sec. 1]. An agency to make investigations throughout the State and present complaints of environmental abuse was provided. A Board was created to conduct hearings and to make appropriate determinations and orders, including the imposition of penalties. The Act obviously contemplates a specialized statewide and uniform program of environmental control and enforcement. The legislature considered this could be more readily brought about if the responsibility of imposing penalties was placed on the same authority that conducted hearings and determined violations.
>
> The Board is to conduct hearings and, if violations are found, appropriately it is to impose penalties. The legislature may confer those powers upon an administrative agency that are reasonably necessary to accomplish the legislative purpose of the agency (*Department of Public Works and Buildings v. Lanter,* 413 Ill. 581, 587; *Reif v. Barrett,* 355 Ill. 104, 133), and we consider that it was appropriate to give the Board the authority to impose monetary penalties." 57 Ill.2d 170, 184; see also *Lake County Contractors Association v. Pollution Control Board,* 54 Ill.2d 16, 18. The *City of Waukegan* decision, however, did not

solely limit attempts to curb possible pollution violations to the designated administrative agency. The legislative recognition of multiple remedies is evidenced by sections 1 and 2 of the Attorney General's Act (Ill. Rev. Stat., 1970 Supp., ch. 14, pars. 11, 12), which permit that State officer to initiate court action for injunctive relief to prevent pollution, as defined by the Environmental Protection Act, notwithstanding the possibility of administrative proceedings pertaining to the same matter. The Environmental Protection Act itself provides that "No existing civil or criminal remedy for any wrongful action shall be excluded or impaired by this Act." (Ill. Rev. Stat., 1970 Supp., ch. 111½, par. 1045(a).) We must therefore reject defendant's position that concurrent jurisdiction to curb pollution is not vested in the circuit court and the proper administrative agency.

The disposition of this case, as recognized by the appellate court and the parties to this appeal, hinges on whether the trial court had jurisdiction of the subject matter of this case after it dismissed the *ex parte* injunction. If the trial court lacked such jurisdiction, its subsequent orders were utterly void. (*Faris v. Faris,* 35 Ill.2d 305, 309.) In his brief, defendant suggests that the action was premised upon sections 42 and 43 (pars. 1042, 1043) of the Environmental Protection Act, which, he asserts, did not explicitly confer the necessary authority upon the trial court.

Jurisdiction of the subject matter has been defined as "the power to adjudge concerning the general question involved, and if a complaint states a case belonging to a general class over which the authority of the court extends, the jurisdiction attaches ***." (*Wood v. First National Bank of Woodlawn,* 383 Ill. 515, 522, *cert. denied,* 321 U.S. 765; see also *O'Connor v. Board of Trustees of Firemen's Pension Fund,* 247 Ill. 54, 58-59.) It is of no import that the complaint may defectively state a cause of action or that the trial court's decision was

erroneous. (*Walton v. Albers,* 380 Ill. 423, 426-27; *Finlen v. Skelly,* 310 Ill. 170, 178.) In determining jurisdiction it is appropriate to look to the nature of the case and the relief sought. *People v. Western Tire Auto Stores, Inc.,* 32 Ill.2d 527, 530.

We conclude that the trial court did not lose jurisdiction after it had dismissed the *ex parte* injunction. The general nature of the proceedings was to restrain pollution violations. There remained pending the complaint which sought a permanent injunction which was authorized by section 42 of the Environmental Protection Act when violations of its provisions occurred. The motion for an injunction filed on October 22, 1970, pursuant to the Attorney General's Act was also at issue. Moreover, as recognized in the dissenting opinion of the appellate court, there exists jurisdiction to abate public nuisances which may endanger the general welfare. (10 Ill. App. 3d at 796-97; see also *City of Monmouth v. Pollution Control Board,* 57 Ill.2d 482, 485.) The pleadings properly raised issues which the trial court could adjudicate, and the court could, if necessary, grant injunctive relief.

Before these matters could be resolved, the parties entered into a stipulation, thereby effectively delaying trial on the merits. As it was stated in *People ex rel. Stead v. Spring Lake Drainage and Levee District,* 253 Ill. 479, at page 493, "The law is well settled that a stipulation touching a party's substantial rights may be enforced by an action at law or by a suit for injunction or other appropriate remedy in equity. [Citation.] Whether the aid of the court is invoked by some summary method during the pendency of the cause or by a resort to another independent action, courts look with favor upon stipulations designed to simplify, shorten or settle litigation and save costs to parties, and will, when called upon in any appropriate manner, compel parties to observe such stipulations unless they are illegal or contrary to public policy." The record establishes that the stipulation at issue

was entered into by the respective attorneys, and it was approved by the trial court only after the court had conferred with defendant. There can be no contention that the stipulation was procured by fraud, was unreasonable or contrary to public policy. The trial court was thereby empowered to enforce the terms of the stipulation.

Accordingly, the judgment of the appellate court is reversed and the cause remanded to the circuit court of Peoria County for further proceedings.

*Reversed and remanded, with directions.*