ROBERT MILLER, Plaintiff-Appellant, *v.* GENERAL TELEPHONE COMPANY OF ILLINOIS *et al.,* Defendants.—(COLUMBIAN ROPE COMPANY, Defendant-Appellee.)

(Nos. 73-199, 73-296 cons.;

Second District (2nd Division)—June 12, 1975.

*Rehearing denied July 22, 1975.*

850

T. MORAN, J., dissenting.

Louis E. Neuendorf and Thomas W. Grant, both of Sandwich, and Gerald M. Sheridan, of Wheaton, for appellant.

Gates W. Clancy, of Geneva, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from a judgment in favor of the defendant, Columbian Rope Company, in a suit for personal injury.

The plaintiff, a construction worker, was sitting in a "bosun" chair some 35 feet above the ground when the rope supporting the chair broke, whereby the plaintiff fell to the ground and was severely injured. Suit was brought against the owner of the building, the general contractor, the plaintiff's employer, the retailer of the rope, the wholesaler of the rope, and the manufacturer of the rope, under various theories of liability. Several of the defendants, in turn, brought third-party actions against other named defendants under the active-passive negligence theory.

The accident occurred in December, 1967, but suit was not actually instituted until December, 1969. There followed extensive discovery depositions and the plaintiff filed a second and a third amended complaint. On October 8, 1971, the case was finally set for trial on October 18, 1971. On October 15, 1971, the plaintiff moved for a continuance of the trial to a date some time after November 8, 1971, due to the absence (in Europe) of a physician who was a material expert witness as to the extent of the plaintiff's injuries. At that time the other attorneys were ready for trial. Defendant, Columbian Rope, objected to the continuance and moved for severance of the issues of liability and damages and further for denial of the motion to continue the trial date. The trial court then denied the continuance and ordered the trial to begin on October 18 on the issue of liability only. The plaintiff, before the trial commenced, filed a written motion objecting to the severance of the issues of liability

and damages and renewed the motion for a continuance. The motion was denied and the case proceeded to trial on the issue of liability only. The trial resulted in the eventual dismissal of all the defendants except Columbian Rope. A verdict was directed in its favor on the strict liability count and the remaining counts of negligence and implied warranty were then submitted to the jury which found the defendant not guilty on both counts.

The two principal contentions of the plaintiff in this appeal are (1) that the trial court lacked jurisdiction to order a separate trial on the issue of liability only, and (2) that the court erred in directing a verdict for the defendant on the question of strict liability for a defective product. It is also contended that the court erred in allowing the admission of certain evidence and that the verdict itself is against the manifest weight of the evidence.

■■ We will consider first the jurisdiction of the court to order a separate trial on the issue of liability. The question was not raised in the post-trial motion. However, the plaintiff attempts to avoid the issue of waiver by asserting that the order in question was not a mere error subject to review on appeal but was a void order having no force and effect because the court had no power to order such severance. The distinction between the legal effect of an act beyond the court's jurisdiction and one which is erroneous but within the court's power requires no elaboration. It is well stated in the leading case of *Baker v. Brown*, 372 Ill. 336, 342-43, where the court said:

> "There is a clear distinction between the effect of a judgment which may be set aside or vacated because of error in reaching the wrong conclusion upon the facts or the pleading, and one that is void because of want of jurisdiction of the person or the subject matter. The first is merely erroneous and unless set aside by the same court, or corrected upon review, cannot be collaterally attacked. On the other hand, a judgment by a court lacking jurisdiction is void—in effect it is not a judgment—and may be attacked in any collateral proceeding by showing the lack of jurisdiction."

Like many other fundamental principles of law, however, this distinction is easier to understand than to apply. The plaintiff cites several cases which he believes establish that the order of severance here was beyond the jurisdiction of the court, even conceding the court had jurisdiction of the general class of subject matter involved. Against these the defendant cites respected authority indicating that if the court had jurisdiction of the person and the subject matter it had power to rule on all issues legitimately arising out of the case, although subject to review and reversal by an appellate court if it erred. A review of the cases cited by the

plaintiff, however, shows them to be rather special situations not apposite to the case before us. *People ex rel. Stone v. Wilson*, 111 Ill.App.2d 101, a decision of this court, involved a question of jurisdiction under the Administrative Review Act, where the court's jurisdiction of the subject matter was clearly circumscribed by the statute such jurisdiction was derived from. In *Mamer v. Morrison*, 62 Ill.App.2d 410, involving a drainage district assessment; *Sweitzer v. Industrial Com.*, 394 Ill. 141, concerning Workmen's Compensation, and in *Thayer v. Village of Downers Grove*, 369 Ill. 334, construing jurisdiction under a local improvement act, the jurisdiction of the court was a given jurisdiction derived and proceeding from the statute; hence, the subject matter itself defined the jurisdiction and while the court had jurisdiction of the subject matter it was a limited jurisdiction responsive to the purposes of the legislation and easily defeated by overstepping its bounds. *Windsor v. McVeigh*, 93 U.S. 274, was a case almost 100 years old involving a person discriminated against because he was a Civil War rebel. It is not apposite as the case involved special circumstances of arbitrary and capricious behavior by the trial court amounting to a complete failure of jurisdiction. As the supreme court pointed out, the answer and appearance of the defendant having been stricken because he was a rebel, "[h]is position with reference to subsequent proceedings was not then unlike that of a party in a personal action after the service made upon him has been set aside. A service set aside is never a service by which the action can be upheld." (93 U.S. 274, 282.) The quotation from this case in the appellant's brief couched in general language culled from the discussion of the case is misleading and not pertinent to the facts here. Actually, the case confirms the general proposition advanced by the defendant, rather than the plaintiff.

*Mason v. Dunn*, 6 Ill.App.3d 448, a decision of this court, was a suit for personal injury arising out of an automobile accident. In that case it was the plaintiff who, for reasons of economy, desired to sever the issues of liability and damages, which he was allowed to do over the objection of the defendant. The plaintiff recovered a judgment and as per stipulation, a second jury was impaneled to assess damages. In his post-trial motion and subsequent appeal the defendant contended that the court erred in severing the issues of liability and damages over the defendant's objection. This court held on appeal that it was error for the trial court to have severed the issues of liability and damages over the objection of the defendant. In so deciding we noted that there were no decisions actually approving such procedure and, in fact, it appeared to be sanctioned only in those jurisdictions where it was expressly provided for by statute or supreme court rule. In considering whether, in spite of

the lack of statutory authority for such procedure, it was within the inherent power of the court, we held it was not, saying,

"We conclude that the trial court is without inherent authority to sever the issues of liability and damages in a single action and that such authority must be derived by either Supreme Court rule or legislative enactment. It was therefore error in this case for the trial court to sever the issues over the objection of the defendant." 6 Ill.App.3d 448, 451.

The issue is not discussed, however, in terms of the court's jurisdiction. It is spoken of as an error, not as a void judgment. Nor did the appellant, apparently, frame the issue in terms of jurisdiction. On the contrary, it was the plaintiff-appellee who sought to avoid the error by claiming it was not an error because the order of severance was within the inherent power of the court. In holding that the severance was not within the inherent power of the court we did not hold that the court lacked jurisdiction but rather that its error was not overcome by any inherent power the court possessed. If there had been either precedent, statutory authorization or inherent power to sever the issues, there would have been no error but lacking any of these, the order severing the issues was held to be error.

■■ The phrase "inherent power" is not synonomous with jurisdiction, which, as stated in *Faris v. Faris*, 35 Ill.2d 305, is the power of the court to hear and decide the particular matter before it. It is true that where the court's jurisdiction is limited by statute to a certain procedure or a stated order of proof it must act within these strictures to retain jurisdiction but in the general class of cases if the court has jurisdiction of the parties and the subject matter the jurisdiction is not lost by an erroneous exercise of such jurisdiction. In *Balzer v. Pyles*, 350 Ill. 344, 349, our supreme court said:

"Jurisdiction of the subject matter is the power to adjudge concerning the general question involved, and if a bill or petition states a case belonging to the general class over which the authority of the court extends, the jurisdiction attaches and no error committed by the court can render the judgment void. If the court had jurisdiction, it is altogether immaterial, when the judgment is collaterally called in question, how grossly irregular or manifestly erroneous its proceedings may have been. The judgment cannot be regarded as a nullity, and cannot, therefore, be collaterally impeached."

In *Baker v. Brown*, 372 Ill. 336, 341, our supreme court quoted in its opinion upholding the jurisdiction of the trial court, the case of *O'Brien v. People ex rel. Kellogg Switchboard & Supply Co.*, 216 Ill. 354, as follows:

854

" '* * * Jurisdiction is the power to hear and determine the subject matter in controversy between the parties to a suit. If the law confers the power to render a judgment or decree, then the court has jurisdiction. [Citations.] Jurisdiction of the particular matter does not mean simple jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs. * * * Jurisdiction does not depend upon the rightfulness of the decision. It is not lost because of an erroneous decision, however erroneous that decision may be. * * *' "

The recent case of *People ex rel. Scott v. Janson,* 10 Ill.App.3d 787 (3rd Dist.) and the sequel to it, *People ex rel. Scott v. Janson,* 57 Ill.2d 451, in which the appellate court was reversed, are illuminating in considering the general question of jurisdiction of the subject matter. The Attorney General and the State's Attorney for Peoria County filed a complaint against the owner of a garbage dump praying for a temporary injunction restraining the operation of the dump and a fine for violation thereof. The complaint was admittedly "couched in terms of the Environmental Protection Act." The circuit court granted the temporary injunction but at the subsequent hearing on the petition to dismiss it, the court dismissed the injunction because of lack of a showing of an emergency situation, as required by the Environmental Protection Act. However, the court denied the defendant's motion to dismiss the complaint. Subsequently, it was stipulated between the parties that the case would be continued and that one Weeber, an employee of the Environmental Protection Agency, would supervise the operation of the dump until restoration satisfactory to the State was accomplished. It was also stipulated that if the dump was operated without satisfactory restoration, monetary penalties could be imposed by the State which, if not paid, would serve as a final finding of fact binding upon the parties and the defendant would thereafter be punished for contempt without a hearing or motion. Subsequently, a petition for penalties was filed by the State and was not paid, resulting in the incarceration of the manager of the defendant for contempt. On appeal the defendant contended that since the case was brought under the Environmental Protection Act the jurisdiction of the court was bounded by that Act and that after the trial court dismissed the ex parte injunction originally issued on the ground that the emergency conditions required for its issuance were not present, the court then lost jurisdiction of the case and its subsequent actions were void. After careful consideration the appellate court agreed, saying:

"When a statute authorizes prescribed procedures and the court

acts contrary to the authority thus conferred it has exceeded its jurisdiction." (10 Ill.App.3d 787, 792.)

The court pointed out that the stipulation between the parties was not binding on the defendant because jurisdiction of the subject matter cannot be conferred upon the court by agreement of the parties.

■■ On appeal to the supreme court the State contended that the general authority given by the Attorney General's Act (Ill. Rev. Stat. 1973, ch. 14, par. 12), providing for the bringing of a suit in the circuit court to prevent pollution could be interpreted as allowing the State to proceed in the circuit court with a civil suit relative to violations of the Environmental Protection Act and that such action is not exclusively within the jurisdiction of sections 42 and 43 of the Environmental Protection Act so as to be bounded by its conditions.

In discussing the point raised as to the court's jurisdiction of the subject matter the supreme court said:

"Jurisdiction of the subject matter has been defined as 'the power to adjudge concerning the general question involved, and if a complaint states a case belonging to a general class over which the authority of the court extends, the jurisdiction attaches * * *.' [Citations.] It is of no import that the complaint may defectively state a cause of action or that the trial court's decision was erroneous. [Citations.] In determining jurisdiction it is appropriate to look to the nature of the case and the relief sought. [Citation.]" (57 Ill.2d 451, 459-60.)

The court then went on to say:

"We conclude that the trial court did not lose jurisdiction after it had dismissed the *ex parte* injunction. The general nature of the proceedings was to restrain pollution violations. There remained pending the complaint which sought a permanent injunction which was authorized by section 42 of the Environmental Protection Act when violations of its provisions occurred. The motion for an injunction filed on October 22, 1970, pursuant to the Attorney General's Act was also at issue. Moreover, as recognized in the dissenting opinion of the appellate court, there exists jurisdiction to abate public nuisances which may endanger the general welfare. [Citations.]" 57 Ill.2d 451, 460.

This case aptly serves to resolve the apparent conflict between the cases cited by the plaintiff and those cited by the defendant on the question of jurisdiction of the subject matter. It is apparent from a reading of the appellate and supreme court decisions that there is no actual conflict but, as noted above in this opinion, in those situations where the

court's jurisdiction is actually confined by statute, either procedurally or substantively, the court can have jurisdiction of the subject matter, yet lose that jurisdiction by acting outside the intended scope or not in accordance with the procedure of the statute. Thus, in the opinion of the appellate court, the trial court lacked jurisdiction because the jurisdictional facts were not present for a judgment under the Environmental Protection Act. However, the supreme court pointed out that the actual subject matter was pollution control and that regardless of any shortcomings in the jurisdictional facts for a proceeding under the Environmental Protection Act the court still retained its jurisdiction to act on a suit involving the subject of pollution control.

It is our opinion, therefore, that in the case before us the court having had jurisdiction of the subject matter—a personal injury suit—under the ordinary jurisdiction of a circuit court of this State and there being no statutory restrictions on its jurisdiction, the error in severing the issues of liability and damages did not deprive the court of its power to hear the case but was only an error appealable under proper procedures.

■■ In this case, however, we are of the opinion the error was not properly preserved for appeal, there being no reference to the issue of severance in the post-trial motion. Supreme Court Rule 366 says:

> "(b) (2) (iii) *Post-Trial Motion.* A party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion."

The point not having been preserved in the post-trial motion it is therefore waived and may not be considered on this appeal.

This is not a harsh result under the circumstances of this case. It should be remembered that the plaintiff himself precipitated the severance by asking for a continuance. Had the court simply denied the request for a continuance and ordered the case to proceed to trial it would undoubtedly have been within its discretion in so doing. The accident had occurred in December of 1967, almost 4 years before. Discovery had been extensive and the plaintiff had during this period amended his complaint twice, the current complaint being the third amended complaint. The case had already been continued for trial once and at the time of the plaintiff's request for a further continuance the other four lawyers were ready for trial. The plaintiff's motion to continue the trial date was made on Friday to continue a trial set to commence the following Monday, in effect, being 1 day before the trial was to commence. The request was not even for a date certain but was for a date some time after the medical witness in question returned from Europe. Moreover, he was only one of several medical witnesses for the plaintiff. Considering the trouble and uncertainty involved in setting a trial calendar where several

lawyers are involved and the long delay which had already ensued it was certainly not an arbitrary or capricious ruling when the trial court denied the request for continuance made on the eve of trial. Had the court stopped there, simply ordering the case to proceed to trial, the same result which occurred in the actual event may very well have occurred anyway. The plaintiff would then have been faced with the dilemma of either proceeding on both liability and damages without one of his medical witnesses or of agreeing to a severance of the issues of liability and damages so as to preserve his medical testimony intact. It is not unreasonable to suppose that under these circumstances he might have made the same decision the court did.

The plaintiff points out that at the time of filing his post-trial motion the decision in *Mason v. Dunn* had not come down, but that decision was announced some 6 months before the post-trial motion was ruled on. The plaintiff, therefore, not only failed to assign the severance as a ground for new trial originally in his post-trial motion but failed during a 6-month period after *Mason v. Dunn* was announced to ask for leave to amend the post-trial motion on this ground. It is not contended that the order was arbitrary or unjust under the circumstances or that in itself it prejudiced the result of the trial. The issue of liability was well and fully tried, and the appeal on this point is itself a technicality and not based on a showing of prejudice which brought about an unjust result. No doubt there are cases where the issues of liability and damages are so interwoven that a severance would be prejudicial, but this does not appear to be such a case and it is hardly appropriate to consider as prejudicial the deprivation of the psychological effect which the medical testimony might have had on the jury's consideration of the *liability* issue if such testimony had been presented.

We turn now to the second contention raised on this appeal—that it was error for the trial court to have directed a verdict for the defendant on the issue of strict liability.

The standard of proof (or lack of proof) for directing verdicts is, of course, that announced in the leading case of *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, where the court said that the trial court should direct a verdict "only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

It must be remembered that the ruling complained of in the present case with regard to a directed verdict was only related to the strict liability count and not to an ordinary negligence issue such as is typically the case where the court directs a verdict. The plaintiff asserts that in

a strict liability case the existence of a defect making the product unreasonably dangerous may be proved by circumstantial evidence, citing the case of *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.*, 12 Ill.App.3d 165; therefore, the plaintiff says, the trial court erred in directing a verdict because there was unquestionably a defect in the rope when it was used by plaintiff and when this fact is "coupled with proof negating that the defective condition was caused by an intervening agency, there is sufficient proof from which the jury could have inferred the existence of the defective condition at the time the rope left the control of the manufacturer." What the plaintiff is trying to do here is to establish a positive inference of defendant's responsibility from a negative inference of plaintiff's employer's lack of responsibility. While the plaintiff does not contend that his expert's testimony that there was no evidence of acid having affected the rope is sufficient to establish liability on the part of the defendant, he maintains that this evidence is sufficient to make a directed verdict improper. We do not agree, because the lack of any evidence of acid contamination is no more than that. While it is a first step in negating Columbian Rope's defense that the rope was damaged elsewhere than on its premises, it does not by any means establish that Columbian Rope was responsible for the breaking of the rope. The plaintiff has a positive burden—he alleges that the rope was dangerously defective when it left Columbian Rope's premises and he must establish by some evidence, either circumstantial or direct, that this is true. There does not appear to be any such evidence. There is some evidence that it was *not* defective when it arrived at plaintiff's employer's plant because it was briefly tested and not found wanting at that time (Mr. Littman's testimony, pages 38 and 89, transcript of testimony). Moreover, it was used for over an hour on the morning of the accident and broke in the afternoon when work resumed after lunch. It would be logical to suppose that if the rope was rotten or had lost its strength by something which occurred in the manufacturing process it would have been no stronger at the beginning of the day of the accident or in the preliminary test made at the plant, than it was at the time it broke. In other words, it would logically have broken at once if the process of decay or dry-rot had already occurred at the premises of Columbian Rope. Nevertheless, that is not the question here; the question is whether there is any evidence that the rope was in a damaged or defective condition when it left the manufacturer's premises, other than the inference founded on a negative inference of plaintiff's innocence that the defendant was responsible because the plaintiff was not. This is not evidence on which a case can be submitted to a jury.

The plaintiff cites the (not related) case of *May v. Columbian Rope*

*Co.*, 40 Ill.App.2d 264. In that case it was alleged that the rope was not only new but had just been bought the day before and brought to the site of the accident that very morning. The case was brought on a theory of *res ipsa loquitur* and the court, mindful of the doctrine that *res ipsa loquitur* ordinarily implies control of the dangerous or defective instrumentality by the defendant at the time of the accident, allowed judgment for defendant notwithstanding the verdict on the ground that the defendant did not have possession or control over the rope when it broke. On appeal the appellate court reversed, pointing out that in some cases the circumstances are strong enough that the inference of negligence survives even though another possession intervenes. In *May*, if the plaintiff's story is believed, the rope was in the possession of the contractor on the job only a few moments when it broke, and it was a brand new rope. These circumstances, the appellate court said, permitted the inference of liability to survive the intervening possession. Actually, the evidence did not establish the plaintiff's story of it being a brand new rope and the case was remanded for a new trial. (We most respectfully correct the erroneous statement in the plaintiff's brief that "judgment for the plaintiff was affirmed.") The case apparently is cited by the plaintiff as indicating that in some special circumstances the doctrine of *res ipsa loquitur* may survive an intervening possession, allowing an inference of liability of the original manufacturer or processor to remain.

This case, however, has no relevance to the one before us. The case we consider here is one of strict liability and strict liability is not to be derived from an inference, but depends on actual evidence, either direct or circumstantial, of a defect in the product at the time it left the manufacturer's hands. Plaintiff's theory of liability, on the other hand, is based on a presumption of negligence, founded not on evidence, but on an inference that the circumstances are such that there is no other logical explanation for the accident than the defendant's negligence in the manufacture of the rope.

That is a theory of liability founded on the doctrine of *res ipsa loquitur*. (58 Am. Jur. 2d *Negligence* § 474-475 (1971); *O'Rourke v. Marshall Field & Co.*, 307 Ill. 197.) But, under *res ipsa loquitur*, except where the intervening possession had been momentary in time (*Johnson v. Stevens Building Catering Co.*, 323 Ill.App. 212), or insignificant in circumstances (*Harris v. Coca-Cola Bottling Co.*, 35 Ill.App.2d 406), the offending product or instrumentality must have been within the power or control of the defendant when the accident occurred (*Miszczak v. Maytag Chicago Co.*, 11 Ill.App.2d 496; 58 Am. Jur. 2d *Negligence* § 496 (1971); 35 A.L.R. 3d 1059 (1971).) In the case we consider here the rope had been out of the possession and control of the defendant for some 9 months

and had been in the possession of the plaintiff's employer under varying conditions and in several locations during that time. The doctrine of *res ipsa loquitur* has no application to this case under the circumstances.

Considering the case, therefore, only from the angle of strict liability for a defective and unreasonably dangerous product, that being the issue on which there was a directed verdict, we must decide whether the evidence, when viewed in its aspect most favorable to the plaintiff, so overwhelmingly favors the defendant that a verdict in favor of the plaintiff could never stand. The difficulty with the plaintiff's contention that the evidence did not so overwhelmingly favor the defendant as to justify a directed verdict, is not that the defendant's case is so strong, but that the plaintiff's case is so weak. There is no evidence whatsoever on which to base a finding that the rope in question was in a dangerously defective condition when it left the defendant's premises. As we noted above, the plaintiff's case on the strict liability issue is based on some negative testimony as to lack of responsibility by his employer—significantly challenged by the finding of defendant's expert—from which plaintiff attempts to draw a positive inference of defendant's guilt as a necessary corollary of his employer's claimed innocence. We do not find in the transcript of the testimony or the exhibits any evidence at all to suggest that the defendant, Columbian Rope, deviated in any way from its normal procedures or standards in the manufacture of the rope, that there was anything suspicious or dubious about the rope when it was first inspected by the plaintiff's employer, or that there was any doubt about its strength as a result of a preliminary testing—cursory as it was—at the employer's plant. Moreover, even the plaintiff's expert testified he found no evidence of a defect in the manufacture of the rope, yet the issue was strict liability for a dangerous defect in the rope which was present when the rope left the defendant's premises. There is no evidence to sustain that theory and whether the evidence of contamination of the rope by muriatic acid or otherwise on the premises of *others* is strong or weak is of no significance. We must agree with the trial court that there was simply not enough evidence of a defect occurring on the defendant's premises to allow the case to go to the jury on that issue.

In the recent case of *Larson v. Thomashow*, 17 Ill.App.3d 208 (1st Dist.), the court considered the question of when a directed verdict was justified in a strict liability case. In upholding a directed verdict for the defendant automobile manufacturer, the appellate court noted that one of the necessary elements of proof for strict liability is set forth in *Suvada v. White Motor Co.*, 32 Ill.2d 612, as being that "the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." (32 Ill.2d 612, 623.) The court said:

"While the Illinois Supreme Court's decision in *Suvada* has been the subject of certain nuances, the requirement of proving that the unreasonable condition in the product had its genesis when the product was in the control of the manufacturer has not been relaxed." (17 Ill.App.3d 208, 219).

After further discussion of cited cases, the court added:

"It is, therefore, evident that while a defect in the product need not manifest itself immediately; the specific defect need not be proven; the question of the normal useful life of a product is properly determined by a jury; and a plaintiff need not disprove other possible causes of the defect, it is still a necessity to produce either direct or circumstantial evidence that would allow the jury to draw the reasonable inference that the defect in the product existed at the time the product left the manufacturer's control." 17 Ill.App.3d 208, 222.

By "circumstantial evidence" we do not mean merely a negative inference. Expert testimony can be regarded as within the category of circumstantial evidence but the expert testimony to be effective must be of such a character as to establish that the product contained a defect when it left the manufacturer's control. The plaintiff cites certain language in the case of *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.*, 12 Ill.App.3d 165, to the effect that:

"It is sufficient if, by expert opinion and/or circumstantial evidence, it appears more probable than not that the product in question contained a defect when it left the manufacturer's control, and that the defect was causally connected to the injury." (12 Ill.App. 3d 165, 177.)

While we would prefer a more precise statement as to the preponderance of the evidence in establishing a prima facie case of strict liability, this language is in any event not relevant to the case before us. What the court in the *Michelin Tire* case obviously meant was that if, weighing the respective findings, theories and exhibits of the experts for both plaintiff and defendant, the probability of a defect in the manufacture of the product clearly emerged from all such evidence, then a prima facie case sufficient to go to the jury was established. The relevance of the *Michelin* case to ours depends on a similar situation of weighing the expert testimony. But, in our case there is nothing from which to deduce an advantage to the plaintiff on the testimony as to a defect in the manufacture. Doctor Colburn, the plaintiff's expert, found "nothing deficient about the rope." On the other hand, some possibility of the rope having been contaminated by acid used at plaintiff's employer's plant was clearly raised by the evidence. There was no conflict between the testimony of

the plaintiff's expert and the defendant's expert on the question of the defect having occurred in defendant's manufacturing process. Gustav Delly, originally employed by the plaintiff, but actually testifying as the defendant's witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60), testified the possibility of acid contamination occurred *after* the rope was manufactured, and it was admitted by Dr. Colburn that there were the same number of fibers in the rope throughout its entire length. The evidence to even suggest a defect in the manufacturing process is entirely lacking so that there was no prima facie case established on that point.

Actually the testimony of Doctor Colburn, the plaintiff's expert, was almost exclusively defensive in character and seemed to be aimed at the possibility of refuting acid contamination, obviously with a view of countering the fact that acid was used on the kind of job the plaintiff was working on when the rope broke. It was plain, therefore, that there was not in this case any question of the preponderance of the evidence such as it adverted to in the *Michelin* case, but rather a complete absence of any evidence at all as to any manufacturing defect or processing defect for which strict liability could be ascribed to the defendant. As noted above, considering the length of time—over 9 months—the rope had been out of the possession of the defendant, the various locations it had been in and the possible exposures to muriatic acid it had been subjected to in that period, the doctrine of *res ipsa loquitur* clearly has no application. The inference of a manufacturing defect based on the plaintiff's expert testimony that the defect was not caused by acid, which was disputed by the defendant's testimony that it was, is no basis on which to submit the issue of strict liability to the jury.

■■ The evidence of acid contamination occurring at plaintiff's employer's plant, while not conclusive, is significant enough to demonstrate a reasonable possibility of some other explanation than a manufacturing defect. Muriatic acid was used extensively in certain aspects of plaintiff's work. There was an "acid area" just outside the plant where acid was dumped, mixed or sprayed. Workers who used acid or came in contact with it in the yard passed in and out of the building through an area adjacent to the storage area of the rope. The acid was used regularly on jobs and was carried in the same open truck used to transport the rope on at least one or two occasions. Moreover, according to the plaintiff's deposition, acid was used at some time on the job where the accident occurred, possibly the same day. In short, as to strict liability; first, there was no evidence supporting manufacturing defects; second, the time was too long and the exposure by intervening agencies too substantial to make an exclusive presumption; and third, there was at least some positive evi-

dence actually contradicting such theory. Under the circumstances, it was clearly in order for the trial court to have directed a verdict on the issue of strict liability.

■■ The plaintiff complains that the court committed reversible error in admitting the testimony of the witness Delly because of insufficient foundation for his testimony. It appears from the transcript of the proceedings that Delly testified as to the condition of the rope when he examined it. This was objected to by the plaintiff on the ground that between the examination of the rope by Doctor Colburn in 1968 and the testing done by Delly in 1970 there was a gap which must be explained or filled in before the witness could testify that the rope was in the same condition as when tested by Doctor Colburn. Plaintiff's attorney had knowledge of the whereabouts and disposition of the rope during part of the period between the testing by Doctor Colburn and the testing by another laboratory which he offered to testify to. But, his offer of testimony on this point was denied by the court. The court felt that sufficient foundation had been laid by Gustav Delly to testify by reason of the fact that plaintiff's attorney had employed Delly to test and examine the rope and had supplied him with a history of the rope. It should be presumed that this was for a useful purpose, that is, for purposes of testimony. Therefore, a sufficient foundation was laid in the opinion of the court. Plaintiff's attorney's offer to testify as to the facts concerning the rope during the interval in question which he claimed to know was declined by the court, evidently on the ground that the plaintiff's attorney was not a proper witness for impeaching the foundation of Delly's testimony. In view of the fact that the witness, Delly, changed his testimony on the stand after being apprised of certain facts he had been unaware of with regard to previous tests, thus rendering the total effect of his testimony of little value, we do not regard this as a matter of great significance, and in any event, we are inclined to believe the ruling was properly within the trial court's discretion.

A point is raised by plaintiff with regard to repeated reading of the same portion of plaintiff's discovery deposition as unduly and improperly emphasizing certain testimony with regard to the use of acid on the job. It appears, however, that the reason that the question and answer of the impeaching deposition was repeated was because the witness first denied and then equivocated in answer to the question about the acid, thus causing the question to be repeated to establish a definite answer. Under the circumstances there was no undue advantage taken—where a witness equivocates he invites emphasizing the impeaching testimony.

■■ The plaintiff contends that the court erred "in submitting the case to the jury on instructions which omitted strict liability and included

instructions which, in effect, directed a verdict for the defendant." Since the court did direct a verdict for the defendant on the issue of strict liability the absence of any instructions on that issue is not surprising. Instructions on an issue not supposed to be considered by the jury would hardly be consistent. In any event objections to instructions must be specifically pointed out in the post-trial motion and there was no such objection in that motion. (Supreme Court Rule 366 (Ill. Rev. Stat. 1973, ch. 110A, par. 366(b)(2)(iii).) The only reference to instructions in the post-trial motion is in paragraph 17 and this is stated in general terms, *viz.*: "The court erred in submitting the case to the jury for the reason that the jury did not understand and was confused by the instructions tendered and read to the jury." This general conclusionary language is insufficient to preserve an error as to a specific instruction.

■■ The failure to specify either the objectionable instruction itself or the particular error objected to in the post-trial motion likewise eliminates from consideration the contention on appeal that there was an inconsistency between instruction No. 16 (the "issues" instruction) and instruction No. 17 with regard to implied warranty. We find no necessary inconsistency as to implied warranty in any event. The plaintiff also objects to the presence in the instructions of the sentence: "First, that the plaintiff was in the exercise of due care for his own safety," contending that freedom from contributory negligence is not an issue under a tort based on implied warranty. In addition to the fact that this objection is not set out in the post-trial motion and was apparently approved by the plaintiff when it was given, it was not in any event a substantial error as there was never at any time during the trial any suggestion that the plaintiff had been guilty of contributory negligence.

■■ The plaintiff also claims that confusion in the instructions was caused by the severance of the issues of liability and damages, which resulted in prejudice to his case. It is clear, however, that if there was any confusion regarding the form of the instructions, it was caused by the plaintiff having sued several defendants on several theories of liability, thus raising a possibility of an inconsistent verdict. The transcript of the conference on instructions shows that it was not the severance of the issues by the court but, rather, the condition of the pleadings and the legal positions of the respective defendants which caused the confusion. This was finally recognized by the plaintiff when, after some discussion of the proposed instructions, he moved to dismiss two of the three remaining defendants from the case. This was a strategic move by the plaintiff, isolating the remaining defendant. It was not dictated by the severance of the issues of liability and damages, but was simply a move by the plaintiff to avoid confusion in the minds of the jury which

might damage his case. To ascribe this uncertainty and the consequent dismissal of two defendants, against whom there was so little evidence, to the severance, is unjustified.

Finally, the plaintiff contends that the verdict is against the manifest weight of the evidence. This contention is apparently based on the conception that a negative finding by plaintiff's expert as to acid contamination of the rope is "evidence" establishing a manufacturing defect. We have already dealt with this contention in discussing the application here of *res ipsa loquitur* and its connection with the doctrine of strict liability. The inference derived from the negative findings is by no means either "evidence" in the strict sense of the word nor sufficient under the circumstances to invoke the doctrine of *res ipsa loquitur*. Inasmuch as Doctor Colburn, the plaintiff's expert, said on direct examination, "I did not find any cause for the break in the rope," and testified that the number of the plies at the point of the break apparently was the same as elsewhere along the rope and Dr. Delly, originally the plaintiff's witness but called by the defendant under section 60, testified that the condition of brittleness which caused the rope to break could not have existed at the time the rope was woven, it appears that the manifest weight of the evidence, if any, was on the side of the defendant.

Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

DIXON, J., concurs.

Mr. JUSTICE THOMAS J. MORAN, dissenting:

The majority holds that once a court obtains subject matter jurisdiction, unrestricted by statute, it has unlimited jurisdiction. It reasons that under this unlimited jurisdiction, any order entered erroneously is voidable, not void.

The opinion states that the error of severing the issues of liability and damages did not deprive the court of its power to hear the instant case. I agree. The question is, however, whether the subject matter jurisdiction gave the court the additional power to change the manner in which the case was to be tried and, if not, was the court's order void or voidable.

Subject matter jurisdiction relates to the power of the court to conduct a hearing in a particular type of case and to adjudicate issues raised by the pleadings within such case. Contrary to the statement in the opinion, "* * * the phrase 'jurisdiction of the subject matter' has come to be the standard phrase referring to the inherent power of the court * * * ." (*Dever v. Bowers*, 341 Ill.App. 444, 448 (1950).) In *Mason*

866

*v. Dunn*, 6 Ill.App.3d 448 (1972), we found that the court lacked inherent power to sever the issues of liability and damages.

The court's jurisdiction or power is derived from the constitution, statute, and common law. Severance of liability and damage issues was unknown to the common law, our constitution and statutes make no provision for such power, and, as the majority recognizes, the court lacked the inherent power to enter such order.

Under such circumstances, the rule of law applicable to the case at bar is found in *Armstrong v. Obucino*, 300 Ill. 140, 143 (1921), where the court stated:

> "Courts are limited in the extent and character of their judgments, and if they transcend their lawful powers their judgments and decrees are *void* and may be collaterally impeached wherever rights claimed under them are brought in question. The doctrine that where a court has once acquired jurisdiction it has a right to decide every question which arises in the cause, and its judgment or decree, however erroneous, cannot be collaterally assailed, is only correct when the court proceeds *according to the established modes governing the class to which the case belongs* and does not transcend in the extent and character of its judgment or decree the law or statute which is applicable to it." (Emphasis added.) (See also *People ex rel. Nordland v. Association of the Winnebago Home for the Aged*, 40 Ill.2d 91, 95-96 (1968); *Flake v. Pretzel*, 381 Ill. 498, 505-06 (1943); *Marabia v. Mary Thompson Hospital*, 309 Ill. 147, 156-57 (1923).)

Under former practice, a bill of review was available only where the claimed error was apparent on the face of the record and could not be availed of where the decree was merely the result of a mistake in judgment. An exception was recognized, however, where the decree was *contrary to a rule of law* or statutory provision. *Collins v. Collins*, 14 Ill.2d 178, 183 (1958).

I find no set of facts or circumstances where, in Illinois, the trial court has the jurisdictional power to order a severance of the issues pertaining to liability and damages in a tort action.

> "Excess of jurisdiction may be defined as the state of being beyond or outside the limits of jurisdiction, and, as distinguished from the entire absence of jurisdiction, means that the act, although within the general power of the judge, is not authorized, and therefore *void*, with respect to the particular case, because the conditions which alone authorize the exercise of his general power in that particular case are wanting, and hence the judicial

power is not in fact lawfully invoked. Although a court may have jurisdiction of the subject matter and the parties, its act or order may, nevertheless, be in excess of its jurisdiction, as being something which it has no power to do * * *." (Emphasis added.) 21 C.J.S. *Courts* § 25 (1940).

I conclude that the trial court here lacked the power to sever the issues of liability and damages. By doing so, it exceeded its subject matter jurisdiction. Its order was therefore void and subject to attack in this appeal.