(Nos. 26927, 26928.—

WILLIAM FLAKE *et al.*, Appellees, *vs.* PAUL W. PRETZEL, Appellant.—RAYMOND T. GAVIN *et al.*, Appellees, *vs.* WILLIAM T. COLLINS, JR., Appellant.

*Opinion filed January 19, 1943.*

JOHN F. TYRRELL, ODE L. RANKIN, and PAUL W. PRETZEL, (OMER POOS, of counsel,) for appellants.

A. H. D'ANZA, for appellees.

Per CURIAM: On April 1, 1941, an election was held for the offices of township collector and five justices of the peace of Proviso township, in Cook county. William T. Collins, Jr., and Joseph J. Lelivelt were, respectively, the candidates of the "Good Government Party of Proviso" and the "Progressive Citizens Party of Proviso," for the office of township collector. Collins received 8721 votes and Lelivelt 8555. For the five offices of justice of the peace, the official canvass of the returns disclosed that Lloyd W. Lehman, David B. Trott, Norman Korfist, Frank J. Carroll and Paul W. Pretzel received the highest number of votes, in the order named. April 17, 1941, William T. Flake, a qualified elector, filed an amended petition in the circuit court of Cook county to contest the election of Lehman, Trott, Korfist, Carroll and Pretzel as justices of the peace. A. H. D'Anza, who received the sixth largest number of votes for justice of the peace on the official canvass, was permitted to file his intervening petition. Lehman, Trott, Korfist and Pretzel answered Flake's amended petition and the intervening petition. On April 17, Raymond T. Gavin, a qualified elector, filed a petition in the circuit court of Cook county to contest the election of Collins as township collector. Lelivelt was permitted to intervene in this action. Collins answered the intervening petition. On August 9, 1941, in the election contest for the offices of justice of the peace, the trial judge appointed David J. Freed "to act as commissioner in the above entitled cause for the purpose of recounting ballots, to proceed to hear

evidence, to examine returns and to take all necessary steps and do all necessary things to determine the true and correct result of said election and to make report thereof to the. court." It was further ordered "that at the time and place of recounting said ballots, the same shall be delivered to the said commissioner by the clerk of this court." On August 25, 1941, in the contest for the office of township collector, another trial judge appointed Freed commissioner, · the order of appointment being the same as the order of August 9, 1941, in the other election contest. Thereafter, the causes were transferred to a third trial judge who entered the final judgment orders. The commissioner heard evidence and recounted the ballots. In the first action, he found that D'Anza received the fifth highest number of votes instead of Pretzel and, accordingly, recommended that Lehman, Trott, Korfist, Carroll and D'Anza be declared elected justices of the peace. In the second, he found that 8663 votes were cast for Collins and 8677 for Lelivelt and that, consequently, the latter should be declared the duly elected township collector and a certificate of election delivered to him. In both causes, objections interposed to the commissioner's reports challenged the jurisdiction of the circuit court to refer any part of the proceedings, required to be taken by law in the premises, to the commissioner upon the ground that no provision therefor is contained in the applicable statute prescribing the powers and duties of the court and procedure in election contests, and that, hence, the commissioner was without power, right or authority to hear, proceed or act as a commissioner of the court in the two causes. Further grounds of objection were that the circuit court was without authority to divest itself of the duties imposed in an election contest pursuant to the Election Act and without power to consider any matter in an election contest not presented to or heard in or before the court, the action being a special statutory proceeding limited in its scope, nature and proceeding to and by the

statute. The objections, ordered to stand as exceptions, were overruled. Admittedly, there was no trial before the court. The commissioner's reports were confirmed, and Lehman, Trott, Korfist, Carroll and D'Anza were declared elected justices of the peace for the town of Proviso on April 1, 1941, and Lelivelt was declared to be the legally elected township collector. Pretzel and Collins have prosecuted separate appeals. The causes have been consolidated for opinion.

To obtain a reversal of the judgments, Collins and Pretzel make numerous contentions. Of these, only one requires consideration. The decisive question is whether the circuit court had authority to refer the causes to a special commissioner. It has long been established that the right to contest the election of an individual to an office is not a common-law right but exists solely by statute in Illinois, and the action is neither at law nor in equity, although the proceeding is governed by rules of chancery practice after the petition is filed. (*Hulse* v. *Nash,* 332 Ill. 500; *Olson* v. *Scully,* 296 id. 418; *Clarke* v. *Bettenhauscn,* id. 373; *Quartier* v. *Dowiat,* 219 Ill. 326; *Douglas* v. *Hutchinson,* 183 id. 323.) It has accordingly been held that it is immaterial whether a proceeding to contest an election is docketed as a cause at law or in equity. (*Quartier* v. *Dowiat; supra.*) Since the right to contest an election is purely statutory, the procedure prescribed by statute must be strictly followed. (*Girhard* v. *Yost,* 344 Ill. 483.) For example, the requirement that the person desiring to contest an election shall file a statement, verified by affidavit, is jurisdictional, and if the statement is not sworn to the court has no jurisdiction of the cause. (*Armstrong* v. *Wilkinson,* 346 Ill. 322; *Daugherty* v. *Carnine,* 261 id. 366.) The statutory provisions governing election contests must be followed and complied with not only by the parties but also by the courts. (*People ex rel. McLaren* v. *DeBoice,* 377 Ill. 634.) The jurisdiction, mode of trial and the en-

tire contest are statutory and, therefore, beyond the judicial power. (*Bowen* v. *Russell,* 272 Ill. 313.) Indeed, a contest cannot be brought in any court unless the statute so provides. (*Douglas* v. *Hutchinson, supra; Linegar* v. *Rittenhouse,* 94 Ill. 208.) It follows, necessarily, that the jurisdiction of courts over election contests must be exercised only in accordance with the statute. (*Graves* v. *Needham,* 379 Ill. 25; *Daugherty* v. *Carnine, supra.*) As has been pertinently observed, "The right to contest an election exists only by virtue of constitutional or statutory provision and when conferred the proceeding must be conducted in or before the body or court which is designated." (*Kohout* v. *Rench,* 340 Ill. 470.) In the light of the familiar principles set forth, it is manifest that unless specific statutory authority for the reference of an election contest to a special commissioner obtains, the circuit court was without authority to make the challenged references. A review of relevant portions of the Election Act is thus required.

Section 97 of the Election Act (Ill. Rev. Stat. 1941, chap. 46, par. 100,) confers upon the circuit courts concurrent jurisdiction with county courts to hear contests of election of township officers. The circuit court of Cook county thus had jurisdiction to hear the proceeding. Although county courts have no chancery jurisdiction they may try election contests by virtue of the statute. Section 112 provides that any elector of a town in and for which a person is declared elected may contest the election. Plaintiffs, Flake and Gavin, were thereby authorized to contest the elections for the offices of justices of the peace and township collector. By section 113, it is provided that the person desiring to contest the election shall, within thirty days after the person whose election is contested is declared elected, file with the clerk of the proper court a verified statement setting forth the points on which he will contest the election. This requirement was satisfied. Sec-

tion 115 declares, "Evidence may be taken in the same manner and upon like notice as in other civil cases." Prior to 1934, the provision was that evidence may be taken in the same manner and upon like notice as in cases in chancery. Section 116 ordains that the case shall be tried in like manner as other civil cases (prior to 1934, the provision was, "in like manner as cases in chancery,") and may be heard and determined by the court in term time or by the judge in vacation at any time not less than ten days after service of process, or at any time after the defendant is required by notification to appear, "and shall have preference in the order of hearing to all other cases." The court, in term time, or the judge, in vacation, it is further provided, may make and enforce all necessary orders for the preservation and production of the ballots, poll books, tally papers, returns, registers and other papers or evidence that may bear upon the contest. Section 119 provides that in case the contest is in relation to the election of some person to an office, the judgment shall declare as elected the person who shall appear to be duly elected. Section 121 ordains that a certified copy of the judgment shall have the same effect as to the result of the election as if it had been so declared by the canvassers. By section 123, provision is made that in all cases of contested elections in the circuit or county courts, appeals may be taken to the Supreme Court in the same manner, and upon like conditions as is provided by law for taking appeals in other civil cases (formerly, "for taking appeals in cases in chancery from the circuit courts.")

The foregoing pertinent provisions of the Election Act disclose the peculiar character of election-contest actions. The statement by the person desiring to contest an election is not, in any real sense, a complaint either at law or in chancery. The pleading is *sui generis*. Section 116 manifects the legislative intent that election contests proceed with dispatch to a conclusion. To effectuate this objective,

provision is made for a speedy hearing of the case and an election-contest action is granted precedence in the order of hearing over all other cases. The only purpose reasonably attributable to the General Assembly in making this provision is an intent that the trial judge himself hear and determine the cause. A provision for preference in the order of hearing would have been unnecessary and futile had it been intended that cases of such public importance could be referred to a special commissioner for a complete hearing, as was done in the causes before us. The final order to be entered is a judgment and not a decree. Further evidence of the special status accorded election-contest proceedings is the provision authorizing a direct appeal to this court from the trial courts. A consideration of all the statutory provisions relative to election contests leads to the inescapable conclusion that, to accomplish an expeditious consideration of an election contest from its inception to a decision by this court, these statutory actions are to be tried by the circuit or county courts, as the case may be, and not by a special commissioner. Had the legislature intended to provide otherwise, appropriate language would undoubtedly have been employed to express its intent.

Prior to January 1, 1934, section 39 of the Chancery Act (Cahill's Stat. 1931, chap. 22, par. 39,) provided, "The court may, upon default, or upon issue being joined, refer the cause to a master in chancery, or special commissioner, to take and report evidence, with or without his conclusions thereon." The foregoing provision has been specifically repealed by section 94 of the Civil Practice Act. (Ill. Rev. Stat. 1941, chap. 110, par. 218.) Section 61 of the Civil Practice Act, corresponding to section 39 of the Chancery Act, as it obtained prior to 1934, provides, "Subject to rules, the court may in any chancery action, or in any action at law in which matters of account are in controversy, on default or upon issue joined, refer the cause to a master or referee to take testimony and report his conclu-

sions thereon." (Ill. Rev. Stat. 1941, chap. 110, par. 185.) To sustain the judgments, plaintiffs and the intervening petitioners, D'Anza and Lelivelt, maintain that even though an election contest be neither an action at law nor a chancery action, after the cause has been instituted, the proceedings are conducted as cases in chancery, including a reference to a master or a special commissioner. They insist that despite the change in section 116 of the Election Act made by eliminating the words "cases in chancery" and substituting the words "other civil cases" the General Assembly intended the original rule to remain unaltered. It is also argued that the trial courts, under their broad chancery powers, enjoyed the right to refer the causes to a commissioner. Pretzel and Collins reply that since section 61 of the Civil Practice Act contains no provision allowing a reference to a special commissioner, the power of a court of chancery to make such a reference has been abolished. We do not deem it necessary to decide the issue · thus made, for the adequate reason that an election contest is neither a chancery action nor a law action, within the contemplation of section 61 of the Civil Practice Act. Jurisdiction to entertain election contests is conferred upon the circuit courts by the Election Act. There is, however, no provision in either the Election Law or the Civil Practice Act directly or impliedly empowering the trial judge in an election contest to refer the cause to a commissioner. The orders of reference were unauthorized, and the actions, being·statutory proceedings, were not merely erroneous but were, instead, void for want of power to make them.

That the power of the court to refer the causes to the special commissioner was not challenged in the first instance is immaterial. The judgments were based on orders which were void because the court exceeded its jurisdiction in entering them. Where a court, after acquiring jurisdiction of a subject matter, as here, transcends the limits of the jurisdiction conferred, its judgment is void. In *Armstrong*

v. *Obucino,* 300 Ill. 140, Mr. Justice Cartwright, speaking for the court, said: "The statement has very frequently been made that where a court has jurisdiction of the parties and the subject matter, its decree, however erroneous, can only be attacked on appeal or error; but the rule is subject to an exception equally well settled,—that a decree may be void because the court has exceeded its jurisdiction." The commissioner's lack of authority was assailed before his reports were confirmed and prior to the rendition of the judgments. Jurisdiction was not waived by defendants' appearances and participation in the hearings.

Plaintiffs and the intervening petitioners place reliance, however, upon *Talbott v. Thompson,* 350 Ill. 86, and assert it is decisive. It appears that the court heard evidence concerning the integrity of the ballots, reserved a motion to exclude them until after they had been counted, examined the bags containing the ballots, and then appointed a commissioner to count the ballots. The propriety of the appointment was not contested. It may well be that the commissioner counted the ballots under the direct supervision of the trial judge. The situation is far different from the present causes where a special commissioner was appointed for the explicit purpose of hearing the evidence with respect to the preservation of the ballots, recounting them outside the presence of the court, and, later, reporting to the court. The duties committed to the special commissioner were nondelegable judicial functions. Our Election Law ordains that an election contest shall be tried by the court in term time or by the judge in vacation, not that the cause shall be tried, as here, by an unauthorized appointee of the court. Manifestly, *Talbott v. Thompson, supra,* is not authority for a reference by the court to a commissioner to hear testimony with respect to the integrity of the ballots and to count the ballots beyond the presence of the court.

We hold that the election contests in the cases at bar were purely statutory proceedings, not being either chancery actions or actions at law; that, since authority for the appointment of a special commissioner was wanting, the orders of reference were void, the commissioner's reports were nullities and that, consequently, the judgments rendered were without a legal basis.

We are constrained to observe that the vice of the departure from the Election Act lies initially with the two trial judges who entered the orders of reference and not with the judge to whom both causes were subsequently reassigned.

For the reasons assigned, the judgments of the circuit court are each reversed and the causes are remanded, with directions to vacate the orders of reference to the special commissioner and all orders subsequently entered.

*Reversed and remanded, with directions.*