**2025 IL 130316**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

(Docket No. 130316)

MIKE ONTIVEROZ, Appellee, v.
CHODRI MA KHOKHAR *et al.*, (Jean Kaczmarek, Appellant).

*Opinion filed January 24, 2025.*

JUSTICE NEVILLE delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Overstreet, Holder White, Cunningham, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     Mike Ontiveroz filed a petition to contest the result of the 2021 election for village president of Glendale Heights. Jean Kaczmarek, the Du Page County Clerk, filed a motion to dismiss the petition for lack of jurisdiction. The Du Page County circuit court granted the motion. In reversing the circuit court's decision, the appellate court noted a possible problem of subject-matter jurisdiction: Ontiveroz

had not included in his petition the statutorily required allegation that he voted in the election. See 10 ILCS 5/23-20 (West 2020) (the petition shall allege that petitioner voted in the election). The appellate court found no need to address the issue because Kaczmarek had not argued for dismissal based on Ontiveroz's failure to allege in the petition that he voted. We hold that courts of review have an independent duty to consider jurisdiction because jurisdiction is a threshold issue that must be considered before considering the merits of a case (*Village of Kirkland v. Kirkland Properties Holdings Co.*, 2023 IL 128612, ¶ 37) and because a reviewing court must resolve a jurisdiction issue even if the jurisdiction issue has not been raised by the parties. *People v. Lewis*, 234 Ill. 2d 32, 36-37 (2009) (reviewing courts have an independent duty to consider jurisdiction even if a jurisdictional issue is not raised by the parties); *McCann v. Continental Casualty Co.*, 4 Ill. 2d 170, 175 (1954) (although the parties did not raise the question of jurisdiction, the court had a duty to address the issue once the court discovered the problem). We reverse the appellate court's judgment, and we affirm the circuit court's order dismissing the petition for lack of jurisdiction.

¶ 2                                    I. BACKGROUND

¶ 3        Glendale Heights held an election for village president on April 6, 2021. On April 27, 2021, Kaczmarek certified the election results: 475 votes for Chodri Ma Khokhar and 473 votes for Mike Ontiveroz.

¶ 4                                    A. Circuit Court

¶ 5        On May 27, 2021, Ontiveroz filed a "Verified Petition" to contest the election results. Despite the heading on the petition, our examination of the petition revealed Ontiveroz had not attached verification affidavits to the petition. He named Kaczmarek as a defendant because she acted as the "election authority" responsible for administering the election. See 10 ILCS 5/1-3(8) (West 2020) (" 'Election authority' means a county clerk or a Board of Election Commissioners."). Ontiveroz alleged in count I that a disqualified candidate misled voters about write-in votes, and in count II he alleged that several ballots did not comply with the requirements of the Election Code (10 ILCS 5/1-1 *et seq.* (West 2020)). The circuit court dismissed the first count, and that ruling is not at issue in this appeal.

¶ 6       On June 1, 2021, more than 30 days after Kaczmarek certified the election results, Ontiveroz filed a motion to supplement the petition, alleging that three people verified the initial petition but that somehow the verification affidavits did not get filed with the petition. The circuit court allowed that amendment, and the court later allowed Ontiveroz to file a second amended petition.

¶ 7       Kaczmarek filed a motion to dismiss the second amended petition under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)), arguing that the petition did not specify who received the votes on the disputed ballots and, therefore, the petition did not adequately allege that counting the disputed ballots altered the result of the election. Kaczmarek later filed a motion to dismiss under section 2-619 (*id.* § 2-619), claiming that the circuit court lacked jurisdiction because Ontiveroz did not file a verified petition within 30 days of the certification of the election results. The circuit court found it had no jurisdiction over the case, and therefore, it dismissed the petition.

¶ 8                                     B. Appellate Court

¶ 9       The appellate court held that the Election Code required only the filing of a petition within 30 days of certification and that the subsequent verification of the petition sufficed to give the circuit court jurisdiction over the case. 2023 IL App (3d) 220446, ¶¶ 31-32. The appellate court also held that Ontiveroz adequately alleged that excluding the votes on the improper ballots would change the result of the election. *Id.* ¶ 33.

¶ 10      The appellate court raised two jurisdictional issues that it did not decide. First, the appellate court suggested that the circuit court might have subject-matter jurisdiction over the election contest in this case despite any alleged failure to comply with statutory prerequisites. The appellate court said, "[h]istorically, election contests have been viewed as matters of special statutory jurisdiction" (*id.* ¶ 29) but added:

          "A potential question exists as to whether special statutory jurisdiction continues to apply in an election contest or similar proceeding that is filed directly in the trial court, such as the one in the present case, and is not brought for administrative review of an electoral board or other administrative body's

ruling. In its more recent decisions, none of which are in the context of an election challenge, our supreme court has generally eliminated the concept of special statutory jurisdiction, other than for matters of administrative review." *Id.* n.7.

For purposes of the decision, the appellate court assumed that "a petitioner's failure to comply with the applicable statutory prerequisites prevents the trial court from obtaining subject matter jurisdiction over the election contest." *Id.* ¶ 29.

¶ 11     Second, the appellate court noted a potential jurisdictional defect other than the ones Kaczmarek raised. The appellate court said: "The language of the original petition was somewhat ambiguous as to whether petitioner had actually voted in the election at issue, another requirement of the statute." *Id.* ¶ 33 n.8. The appellate court did not address the jurisdictional issue because Kaczmarek "never raised an issue as to that ambiguity." *Id.* The appellate court reversed the circuit court's order dismissing Ontiveroz's petition and remanded for further proceedings on count II of Ontiveroz's second amended petition. *Id.* ¶ 36.

¶ 12     This court granted Kaczmarek's petition for leave to appeal (see Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023)), and she has filed a brief seeking reversal of the appellate court's judgment. Ontiveroz did not file a response brief, and he did not participate in oral argument.

¶ 13                                   II. ANALYSIS

¶ 14     Kaczmarek presents three arguments for affirming the circuit court's dismissal of Ontiveroz's petition (and amended petitions) for lack of jurisdiction: (1) Ontiveroz failed to file the verification affidavits within 30 days of the certification of the election results, (2) Ontiveroz did not sufficiently allege grounds for overturning the election results, and (3) Ontiveroz did not allege that he voted.

¶ 15                              A. Standard of Review

¶ 16     Although Ontiveroz filed no brief on appeal, we address the arguments on their merits. In *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), this court held that, when the appellant claims errors arose in a

case with a straightforward record and the court of review can easily decide the claimed errors without the aid of an appellee's brief, the court of review should decide the merits of the appeal. The *Talandis* court added that even with a complicated record, if the appellant's brief demonstrates *prima facie* reversible error and the record supports the appellant's arguments, the appellate court may reverse the trial court's judgment. *Id.*

¶ 17 We review *de novo* the circuit court's decision to grant a section 2-619 motion to dismiss, and we assume as true all well-pleaded allegations of the petition. *M.A.K. v. Rush-Presbyterian-St.-Luke's Medical Center*, 198 Ill. 2d 249, 255 (2001); *Moon v. Rhode*, 2016 IL 119572, ¶ 15. The case also presents a question of the interpretation of the Election Code (10 ILCS 5/1-1 *et seq.* (West 2020)). We also review *de novo* questions of statutory interpretation. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41.

¶ 18                                B. Subject-Matter Jurisdiction

¶ 19 The only issue Kaczmarek raises in this appeal, and the only issue we must address in this case, is whether the circuit court had subject-matter jurisdiction over the election contest issue raised in Ontiveroz's petition. Subject-matter jurisdiction refers to a tribunal's power to hear and determine cases of the general class to which the proceeding belongs. *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 13 (citing *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 23).

¶ 20 Kaczmarek contends that, in election contests, courts have limited special statutory jurisdiction and, therefore, Ontiveroz's failure to meet the requirements of section 23-20 of the Election Code (10 ILCS 5/23-20 (West 2020)) left the circuit court without subject-matter jurisdiction. See *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 12; *In re Contest of the Election for Governor & Lieutenant Governor Held at the General Election on November 2, 1982*, 93 Ill. 2d 463, 474 (1983).

¶ 21 To decide whether the trial court had subject-matter jurisdiction, we will (1) explain special statutory jurisdiction, (2) find that the Illinois Constitution applies special statutory jurisdiction to all circuit court review of administrative action, (3) explain the *Belleville Toyota* court's interpretation of subject-matter

jurisdiction (see *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325 (2002)), (4) interpret the constitutional limit on jurisdiction in light of its purpose and the definition of administrative action, (5) determine whether county clerks administering elections perform administrative actions, and (6) determine whether petitions in election contests challenging actions of a county clerk must meet the pleading standards for special statutory jurisdiction. Therefore, applying section 23-20 to Ontiveroz's petition, we find that the only petition filed within the statutory filing period did not meet the requirements of the statute and, consequently, the circuit court correctly held that the petition did not confer subject-matter jurisdiction on the court.

¶ 22                          1. Special Statutory Jurisdiction

¶ 23     A court exercises "special statutory jurisdiction" to review an administrative decision when the legislature has prescribed procedures in a statute for obtaining judicial review of an administrative decision. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2014 IL 116642, ¶ 10. The language in the statute confers special statutory jurisdiction and sets the limit for the court's authority, as the court has no powers from any other source. *Id.* "A party seeking to invoke a court's special statutory jurisdiction must therefore comply strictly with the procedures prescribed by the statute. [Citations.] If the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the court to review" the challenged administrative action. *Id.*; see *Ameren Transmission Co. of Illinois v. Hutchings*, 2018 IL 122973, ¶ 13 (Illinois courts have authority to review administrative action only as provided by law).

¶ 24                          2. Article VI, Section 9

¶ 25     The appellate court suggested that special statutory jurisdiction, established in article VI, section 9, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 9), might not apply to this case. 2023 IL App (3d) 220446, ¶ 29 n.7.

¶ 26     We find the appellate court's suggestion that the aforementioned constitutional provision might not apply to the jurisdiction questions in this case to be erroneous. Article VI, section 9, of the Illinois Constitution establishes the jurisdiction of the

circuit courts over "all justiciable matters," with exceptions for the supreme court's exclusive jurisdiction relating to redistricting of the General Assembly and to the ability of the governor to serve or resume office. Ill. Const. 1970, art. VI, § 9. The constitution then specifies: "Circuit Courts shall have such power to review administrative action as provided by law." *Id.* We have consistently interpreted the final sentence of article VI, section 9, as establishing that special statutory jurisdiction applies to review of administrative action. See *Belleville Toyota*, 199 Ill. 2d at 334; *Ameren Transmission*, 2018 IL 122973, ¶ 13 (jurisdiction for review of administrative action is considered "special statutory jurisdiction" that exists only through a grant from the General Assembly).

¶ 27        The appellate court suggested that Kaczmarek's certification of election results did not count as "administrative action," as the appellate court interpreted the phrase to apply only to cases "brought for administrative review of an electoral board or other administrative body's ruling." 2023 IL App (3d) 220446, ¶ 29 n.7.

¶ 28        We construe our constitution in accord with the same general principles that govern our construction of statutes. *Walker v. McGuire*, 2015 IL 117138, ¶ 16; see *Rowe v. Raoul*, 2023 IL 129248, ¶ 21 (the construction of constitutional provisions is governed by the same general principles that apply to statutes). We strive to "determine and effectuate the common understanding of the citizens" who adopted the constitution. *Kanerva v. Weems*, 2014 IL 115811, ¶ 36. We start our interpretation with the natural and popular meaning of the words used at the time of adoption and "the object to be attained or the evil to be remedied" by the constitutional provision. (Internal quotation marks omitted.) *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 526 (1990); see *Walker*, 2015 IL 117138, ¶ 16 (courts interpreting a provision of the constitution look first to the natural meaning of the words used and the purpose of the provision).

¶ 29                            3. *Belleville Toyota*

¶ 30        The appellate court cited *Belleville Toyota*, 199 Ill. 2d at 336-39, as authority for its suggestion that special statutory jurisdiction might not apply here. In *Belleville Toyota*, this court held that the circuit court's jurisdiction under the 1970 constitution "stands in stark contrast to" the court's jurisdiction under the 1870 constitution, which gave the circuit court " 'original jurisdiction of all causes in law

- 7 -

and equity.' " *Id.* at 336 (quoting Ill. Const. 1870, art. VI (amended 1964), § 12). The *Belleville Toyota* court explained that, under the 1870 constitution, circuit courts had limited jurisdiction over all cases where the cause of action arose only under a statute, without roots in common law or equity. *Id.* Under the 1870 constitution, if the case did not arise under the common law or in equity, that is, in cases involving purely statutory causes of action, "unless the statutory requirements were satisfied, a court lacked jurisdiction to grant the relief requested." *Id.* at 336-37.

¶ 31    The 1970 constitution granted circuit courts jurisdiction over "all justiciable matters," with exceptions only for the supreme court's exclusive jurisdiction relating to redistricting and the ability of the governor to serve in office, and subject to the limitation that "Circuit Courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, § 9. The 1970 constitution thus expanded the jurisdiction of the circuit courts to cover statutory causes of action, even where the plaintiff had not complied with all statutory requirements—except in cases involving review of "administrative action." *Belleville Toyota*, 199 Ill. 2d at 334.

¶ 32                4. Definition of "Administrative Action" and
              Purpose of the Constitutional Limitation on Jurisdiction

¶ 33    Because the Illinois Constitution does not define the phrase "administrative action," "we may use the aid of a dictionary to ascertain the plain and ordinary meaning of those terms." *Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 26. Two Illinois Appellate Court cases appropriately adopted the definition of "administrative action" found in Black's Law Dictionary. In *Glass v. Department of Corrections*, 2023 IL App (4th) 230116, ¶ 19, the court said, "At least since 1857, according to Black's Law Dictionary, the term 'administrative action' has meant '[a] decision or an implementation relating to the government's executive function or a business's management.' " (quoting Black's Law Dictionary (11th ed. 2019)). The court in *Keeling v. Board of Trustees of the Forest Park Police Pension Fund*, 2017 IL App (1st) 170804, ¶ 30, adopted the same definition.

¶ 34    The limitation on jurisdiction in the Illinois Constitution, like similar limitations on jurisdiction recognized in other states, serves the purpose of protecting the

separation of powers. See Ill. Const. 1970, art. II, § 1 ("The legislative, executive and judicial branches are separate. No branch shall exercise powers properly belonging to another."); see also *Medical Arts Clinic v. Franciscan Initiatives, Inc.*, 531 N.W.2d 289, 300 (N.D. 1995) ("the doctrine of separation of powers restricts judicial review of decisions by the executive branch of government"); *Oklahoma Department of Corrections v. Byrd*, 2023 OK 97, ¶ 19, 542 P.3d 845 (under the doctrine of separation of powers, "in the absence of express authority of law so to do, the judiciary will not interfere with the exercise of executive powers" (internal quotation marks omitted)).

¶ 35      Because the constitutional provision limiting review of administrative action protects the separation of powers, it reaches far more than cases brought to review electoral board or administrative agency rulings. It applies to all actions of government officials acting as part of the executive branch in an administrative capacity. See *Glass*, 2023 IL App (4th) 230116, ¶ 19.

¶ 36      Accordingly, applying the definition of "administrative action" in the context of the Illinois Constitution of 1970 and in light of the purpose of the limitation on the court's jurisdiction to review executive action, we find that a decision or implementation relating to the government's executive function qualifies as an administrative action. See *id.*

¶ 37                  5. County Clerks, Like Electoral Boards, Perform
                        Administrative Actions When They
                        Administer Elections

¶ 38      Case law makes it clear that an electoral board is an administrative agency. *Cooke v. Illinois State Board of Elections*, 2021 IL 125386, ¶ 49; *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 209 (2008); *Kozel v. State Board of Elections*, 126 Ill. 2d 58, 68 (1988). When courts review actions of electoral boards, "[b]ecause an electoral board is an administrative agency, that review is more accurately administrative review." *Corbin v. Schroeder*, 2021 IL 127052, ¶ 31. An electoral board's duties "are primarily executive in nature" because the board has "general supervision over the administration of the registration and election laws." (Internal quotation marks omitted.) *Walker v. State Board of Elections*, 65 Ill. 2d 543, 561 (1976).

¶ 39　　The Election Code establishes that county clerks or boards of election commissioners serve as election authorities. 10 ILCS 5/1-3(8) (West 2020) (" 'Election authority' means a county clerk or a Board of Election Commissioners."). The administrative duties of county clerks with respect to elections closely match the administrative duties of electoral boards. See *Harlan v. Scholz*, 866 F.3d 754, 756 (7th Cir. 2017). County clerks and electoral boards administer elections in Illinois. *Id.* The Election Code provides that, after the election authority has totaled the vote for an election, the election authority has responsibility for the administrative duty of sending the results to the State Board of Elections. 10 ILCS 5/22-9 (West 2020).

¶ 40　　Just as the actions of electoral boards in administering elections qualify as administrative actions (see *Corbin*, 2021 IL 127052, ¶ 31), the similar actions of county clerks in administering elections qualify as administrative actions. See *People ex rel. Rosenberg v. Keating*, 144 P.2d 992, 992 (Colo. 1944) (election commission engaged in "administrative activity *** to perform the duties in relation to elections customarily discharged by county clerks"); *Henry v. Ysursa*, 231 P.3d 1010, 1015 (Idaho 2008) ("The administration of election laws is under the general supervision of the county clerks."); *City of Eugene v. Roberts*, 756 P.2d 643, 645 (Or. Ct. App. 1988) (county clerks exercise general supervision of administration of election laws).

¶ 41　　We hold that county clerks administering elections perform administrative actions, within the meaning of article VI, section 9, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VI, § 9). Therefore, courts have subject-matter jurisdiction to review a petition challenging the county clerk's administrative actions in election cases only if the petition complies with section 23-20 of the Election Code (10 ILCS 5/23-20 (West 2020)). In accord with the constitution, courts must limit review of election contests to the circumstances in which the legislature has promulgated statutes that have explicitly granted courts authority for such review, with due regard for the legislature's concern for the need for timely finality. See *Doelling v. Board of Education of Community School District No. 88*, 17 Ill. 2d 145, 146 (1959) (constitution imposes strict jurisdictional limitations on timing because of the need for finality in election contests); *Pullen v. Mulligan*, 138 Ill. 2d 21, 32-33 (1990) (court lacks jurisdiction where petitioner fails to timely file an election contest).

¶ 42 We reaffirm our holding in *Bettis*, 2014 IL 117050, ¶ 14, where we held that circuit courts may exercise jurisdiction over election cases only as provided by statute because, in election cases, the court exercises special statutory jurisdiction. Because the court has no powers from any other source, the language of the statute conferring jurisdiction limits the extent of the court's jurisdiction. "In the exercise of special statutory jurisdiction, if the mode of procedure prescribed by statute is not strictly pursued, no jurisdiction is conferred on the circuit court." *Id.*; see *In re Contest of the Election for Governor*, 93 Ill. 2d at 474 ("Election contests were unknown at common law and are strictly creatures of statute. A court has no jurisdiction in such cases unless provided by statute."); *Whitley v. Frazier*, 21 Ill. 2d 292, 294 (1961) (the right to contest an election is statutory, and the statute must be strictly followed); *Patterson v. Crowe*, 385 Ill. 514, 518 (1944) (same); *Flake v. Pretzel*, 381 Ill. 498, 501 (1943) (same).

¶ 43                                 C. Ontiveroz's Petition Did Not Meet
                                 Statutory Jurisdictional Requirements

¶ 44 Kaczmarek argues that the circuit court correctly dismissed the petition because Ontiveroz did not meet the jurisdictional requirements of section 23-20 of the Election Code (10 ILCS 5/23-20 (West 2020)). That section provides that (1) the petitioner must file the petition contesting the election within 30 days after the declaration of the election result, (2) the petition must "be verified by affidavit," (3) the petition must "allege that the petitioner voted at the election," (4) the petition must state that the petitioner "believes that a mistake or fraud has been committed in specified precincts in the counting or return of the votes for the office or proposition involved or that there was some other specified irregularity in the conduct of the election in such precincts," and (5) "the prayer of the petition shall specify the precincts in which the recount is desired." *Id.*

¶ 45                                 1. The Appellate Court Had a Duty to Determine Whether
                                 It Had Subject-Matter Jurisdiction

¶ 46 Kaczmarek contends we should affirm the circuit court's dismissal of the case because Ontiveroz did not allege he voted at the election. Although the appellate court found the initial and amended petitions "somewhat ambiguous as to whether

- 11 -

petitioner had actually voted in the election at issue," the court did not address the jurisdictional issue because Kaczmarek "never raised an issue as to that ambiguity." 2023 IL App (3d) 220446, ¶ 33 n.8.

¶ 47        The parties cannot waive an objection to the lack of subject-matter jurisdiction, and the parties' consent cannot confer subject-matter jurisdiction on the court. *Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶ 8; see *People v. Flowers*, 208 Ill. 2d 291, 303 (2003) ("Lack of subject matter jurisdiction is not subject to waiver [citation] and cannot be cured through consent of the parties [citation]."). The courts have an independent duty to ensure that they have subject-matter jurisdiction over the cases they decide. *Vasquez Gonzalez*, 2018 IL 123025, ¶ 8. Courts of appeal have "an obligation to take notice of matters which go to the jurisdiction of the circuit court." *Belleville Toyota*, 199 Ill. 2d at 334.

¶ 48        Accordingly, once the appellate court recognized an issue concerning the circuit court's subject-matter jurisdiction, it had a duty to address the issue and determine whether the circuit court lacked subject-matter jurisdiction because Ontiveroz failed to allege he voted. See *id.*

¶ 49                    2. Ontiveroz Did Not Allege That He Voted

¶ 50        The appellate court found the initial petition ambiguous on the issue of whether Ontiveroz voted. We disagree. We find that Ontiveroz's initial petition failed to include an allegation that Ontiveroz voted in the election held on April 6, 2021. Because the petition did not plead the statutorily required allegation, the petition did not confer jurisdiction on the circuit court. See *Adams v. McCormick*, 216 Ill. 76, 77 (1905) ("The petition filed by the appellant in the case at bar did not allege that the petitioner was an elector of Shelby county. The petition was therefore fatally defective ***.").

¶ 51        As the initial petition did not confer jurisdiction on the circuit court, the circuit court had no authority to allow Ontiveroz to amend his petition after the 30-day period allowed by the Election Code for filing election contests. See *Whitley*, 21 Ill. 2d at 294 ("Where a petition is [defective] and the 30-day period expires before motion is made to amend, there is no longer jurisdiction to cure the defect.").

¶ 52                    3. Ontiveroz Did Not Timely File a Verified Petition

¶ 53        The appellate court held that section 23-20 did not bar Ontiveroz's petition because

>   "the verification affidavits had been signed before the original petition was filed
>   and (1) the controlling statute did not require that the affidavits be attached to
>   or filed with or at the same time as the original petition, [and] (2) the case law
>   precedent allows election contest petitions to be amended after the 30-day filing
>   deadline has expired." 2023 IL App (3d) 220446, ¶ 26.

We disagree. The initial petition did not confer jurisdiction on the circuit court because it lacked verification affidavits. *Doelling*, 17 Ill. 2d at 146. Here, as in *Doelling*, 17 Ill. 2d 145, the petition filed within the 30-day period lacked verification affidavits, and the petitioner later sought leave to amend to add the verification affidavits. The *Doelling* court affirmed dismissal of the petition, reasoning that the circuit court lacked jurisdiction unless the petitioner complied with the requirement of a petition verified by affidavit. Because the jurisdictional 30-day filing period ended before the petitioner filed the verification affidavits, the circuit court had no jurisdiction to permit the petitioner to file the affidavits. *Id.* at 146 (citing *Flake*, 381 Ill. at 501).

¶ 54        Because we find that Ontiveroz's failures (1) to allege in the petition that he voted in the election and (2) to attach verification affidavits to the petition left the circuit court without subject-matter jurisdiction, we need not address Kaczmarek's final argument: that this court should affirm the judgment of the circuit court because the petition failed to allege that excluding the challenged ballots would have changed the result of the election.

¶ 55                                III. CONCLUSION

¶ 56        The circuit court correctly dismissed the petition for lack of jurisdiction because Ontiveroz did not file verification affidavits within 30 days of the clerk's certification of the election results. Ontiveroz's failure to allege that he voted in the election prevented the circuit court from acquiring jurisdiction and further supports the dismissal of the petition. Accordingly, we reverse the appellate court's

- 13 -

judgment and affirm the circuit court's order dismissing the petition.

¶ 57   Appellate court reversed.

¶ 58   Circuit court affirmed.